[Cite as *State v. Simmons*, 2013-Ohio-5088.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | CASE NO.  CA2012-11-229 |
| | : | O P I N I O N |
| - vs - | | 11/18/2013 |
| | : | |
| CALVIN SIMMONS, SR., | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2012-04-0566

Michael T. Gmoser, Butler County Prosecuting Attorney, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for plaintiff-appellee

Fred S. Miller, 246 High Street, Hamilton, Ohio 45011, for defendant-appellant

**HENDRICKSON, P.J.**

{¶ 1}  Defendant-appellant, Calvin Simmons, Sr., appeals from his convictions for possession of cocaine and resisting arrest following his plea of no contest in the Butler County Court of Common Pleas.  Appellant argues the trial court erred in overruling his motion to suppress evidence obtained from an illegal search and seizure.  For the reasons set forth below, we overrule appellant's arguments and affirm his convictions.

{¶ 2}  On May 30, 2012, appellant was indicted on one count of possession of cocaine in violation of R.C. 2925.11 and one count of resisting arrest in violation of R.C. 2921.33(A).  On August 3, 2012, appellant filed a motion to suppress evidence relating to his arrest "on the grounds that said evidence is the fruit of an unconstitutional search and seizure in violation of the rights guaranteed * * * by the Fourth and Fourteenth Amendments to the United States Constitution and Article I, Section 14 of the Ohio Constitution."  The trial court held an evidentiary hearing on the motion to suppress on September 6, 2012.

{¶ 3}  Aaron Hucke, an officer with the City of Hamilton Police Department, was the only witness who testified at the suppression hearing.  Hucke explained that he and his partner, Officer Johnson, were both in uniform and riding in a marked police cruiser in the area of Ludlow and 6th Street in the city of Hamilton, Ohio on the evening of April 5, 2012.  During their patrol, Hucke saw appellant sitting on the "outside stairs" of an apartment building.  Hucke stated he had patrolled the area for over nine years, and he described it as a "high drug area" where there had been multiple arrests for narcotic activities, including possession and trafficking.  Hucke further stated that he had made between eight to ten arrests, five or six of which were drug arrests, at the same corner of Ludlow and 6th Street where he observed appellant sitting.  However, Hucke had no prior encounters with appellant.

{¶ 4}  At the time Hucke observed appellant sitting on the stairs outside the apartment building, Hucke noticed three females with whom he had prior dealings for drugs and prostitution walking away from the corner, approximately 15 feet south of appellant.  Hucke did not observe any contact between appellant and these three females.  When the patrol car Hucke was riding in stopped at a stop sign at the intersection of Ludlow and 6th Street, Hucke observed appellant looking down at his left hand, as if he was "counting something in his hand."  At this time, appellant was sitting approximately ten to 12 feet away from the

- 2 -

patrol car. Hucke testified that upon looking up and noticing the patrol car, appellant "got startled, closed his hand - - clenched his hands and brought his hand down to his * * * left side." Hucke described appellant as acting "extremely nervous."

{¶ 5} At this point in time, appellant stood up and began walking in Hucke's direction. Appellant's left fist was clenched by his side and, in his right hand, he carried a cane. Hucke exited the patrol car and approached appellant, asking what appellant had in his hand. Appellant responded "nothing." Appellant then started to walk away from Hucke, with his left hand remaining clenched. At this time, Hucke was able to see between a quarter-of-an-inch to an inch worth of a clear plastic baggie sticking out of the back of appellant's closed hand. Hucke testified that seeing the plastic baggie was "significant" to him because "[t]hat's the way that drugs are usually transported." Hucke again asked appellant if he had anything in his hand, and appellant said "no" while continuing to walk away. Hucke then grabbed ahold of appellant's left hand. Appellant pulled away from Hucke and put what Hucke described as a plastic baggie containing "off-white rocks" into his jacket pocket. Hucke tried grabbing ahold of appellant while shouting to his partner that appellant was carrying "dope." Hucke then "placed the [appellant] off balance and took him to the ground" because he was concerned about the cane appellant still had in his right hand.

{¶ 6} Once appellant was on the ground, he pulled the baggie from his pocket and put it inside his mouth. Johnson was able to pull the baggie from appellant's mouth and retrieve one of the off-white rocks. At Johnson and Hucke's orders, appellant "spit out" three more off-white rocks onto the ground. Appellant was then placed under arrest.

{¶ 7} On September 10, 2012, the trial court denied appellant's motion to suppress. The trial court found appellant's interaction with Hucke was consensual until the point Hucke grabbed appellant's left hand. The trial court then found the totality of the circumstances, including Hucke's "observation of the [appellant's] demeanor and his - - his activity of the

- 3 -

furtive movements as well as his nervous or startled demeanor, [and] the high * * * crime area," provided Hucke with reasonable and articulable suspicion to make a *Terry* stop pursuant to *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868 (1968). During the *Terry* stop, Hucke observed the drugs in plain view. "Once he observe[d] those drugs * * * [Hucke] ha[d] probable cause to effect and arrest [appellant]."

{¶ 8} After the trial court denied his motion to suppress, appellant entered a plea of no contest to the charges of possession of cocaine and resisting arrest. Appellant was sentenced to six months in prison.

{¶ 9} Appellant now appeals, raising as his sole assignment of error the following:

{¶ 10} THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT WHEN IT REFUSED TO SUPPRESS THE FRUITS OF AN ILLEGAL SEARCH AND SEIZURE.

{¶ 11} Appellant argues the trial court erred in denying his motion to suppress as the encounter between Hucke and appellant was not consensual when the police "persisted in investigating" appellant by asking him to reveal what was in his left hand. He further contends that Hucke lacked reasonable and articulable suspicion to justify a *Terry* stop. In support of his arguments, appellant relies on the Second District's decision in *State v. Cook*, 2d Dist. Montgomery No. 20427, 2004-Ohio-4793, and the Eighth District's decision in *State v. Nealen*, 84 Ohio App.3d 235 (8th Dist.1992).

{¶ 12} Our review of a trial court's denial of a motion to suppress presents a mixed question of law and fact. *State v. Cochran*, 12th Dist. Preble No. CA2006-10-023, 2007-Ohio-3353, ¶ 12. Acting as the trier of fact, the trial court is in the best position to resolve factual questions and evaluate witness credibility. *Id.* Therefore, when reviewing the denial of a motion to suppress, a reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Oatis*, 12th Dist. Butler No.

CA2005-03-074, 2005-Ohio-6038, ¶ 10. "An appellate court, however, independently reviews the trial court's legal conclusions based on those facts and determines, without deference to the trial court's decision, whether as a matter of law, the facts satisfy the appropriate legal standard." *Cochran* at ¶ 12.

{¶ 13} "It is well-recognized that officers may briefly stop and detain an individual, without an arrest warrant and without probable cause, in order to investigate a reasonable articulable suspicion of criminal activity." *State v. Potter*, 12th Dist. Butler No. CA2006-07-166, 2007-Ohio-4216, ¶ 12, citing *Terry*, 392 U.S. at 19-21. "The propriety of an investigative stop by a police officer must be viewed in light of the totality of the surrounding circumstances" as "viewed through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training." *State v. LeClair*, 12th Dist. Clinton No. CA2005-11-027, 2006-Ohio-4958, ¶ 9, citing *State v. Freeman*, 64 Ohio St.2d 291 (1980), paragraph one of the syllabus.

{¶ 14} It is equally well-recognized that the Fourth Amendment is not implicated in all personal encounters between police officers and citizens, such as the case where there is a consensual encounter. *Florida v. Bostick*, 501 U.S. 429, 434, 111 S.Ct. 2382 (1991); *Potter* at ¶ 13; *Hamilton v. Stewart*, 12th Dist. Butler No. CA2000-07-148, 2001 WL 208838, *2 (Mar. 5, 2001). "An encounter which does not involve physical force or a show of authority is a consensual encounter that does not trigger Fourth Amendment scrutiny; therefore, an officer does not need reasonable suspicion merely to approach an individual in order to make reasonable inquires of him." *Potter* at ¶ 13, citing *Stewart* at *2. The fact that a police officer identifies himself as such does not "convert the encounter into a seizure requiring some level of objective justification." *Florida v. Royer*, 460 U.S. 491, 497, 103 S.Ct. 1319 (1983). Rather, "'[e]ncounters are consensual where the police merely approach a person in a public place, engage the person in conversation, request information, and the person is free not to

answer and walk away.'" *Potter* at ¶ 13, quoting *State v. Taylor*, 106 Ohio App.3d 741, 747 (2d Dist.1995).

{¶ 15} Based on our review of the evidence, we find that the initial encounter between appellant and Hucke was consensual. At the beginning of his interaction with appellant, Hucke did not use any force, did not exercise his authority as a police officer, did not indicate that appellant could not leave, and did nothing to impede appellant's travel. Rather, the record reflects that until the point Hucke grabbed appellant's left hand after spotting the plastic baggie clenched in appellant's fist, Hucke did no more than approach appellant in a public area and ask two reasonable questions: "what's in your hand" and "do you have anything in your hand." As we have repeatedly held, "an officer does not need reasonable suspicion merely to approach an individual in order to make reasonable inquires of him." *Potter* at ¶ 13; Stewart at *2; *State v. Brock*, 12th Dist. Clermont No. CA97-09-077, 1998 WL 281307, *3 (June 1, 1998).

{¶ 16} However, once Hucke grabbed appellant's hand, the nature of the encounter changed from a consensual encounter to a *Terry* stop. Here, the totality of the circumstances surrounding Hucke's interaction with appellant justified Hucke's detention of appellant, as there were "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant[ed] [such] intrusion." *Terry*, 392 U.S. at 21. The following facts justified Hucke's investigative stop: (1) the area where his encounter with appellant took place is known as a high crime area with frequent drug activity; (2) Hucke had made eight to ten previous arrests, five or six of which were drug arrests, at the same corner of Ludlow and 6th Street where he observed appellant sitting; (3) Hucke observed appellant looking down and "counting something" in his left hand and becoming "startled" and "extremely nervous" upon spotting a police officer; (4) Hucke observed appellant making furtive gestures by clenching his hand and dropping it to his side after appellant noticed

- 6 -

Hucke's presence; (5) Hucke knew appellant was being dishonest about having "nothing" in his left hand as Hucke observed a plastic baggie sticking out of appellant's fist; and (6) Hucke's experience as a police officer gave him knowledge that clear plastic baggies, like the one clenched in appellant's fist, were commonly used to transport and sell drugs.

{¶ 17} While several of the above considerations, standing alone or with few other supporting grounds, would not create a reasonable and articulable suspicion of criminal wrongdoing, the totality of the circumstances in this instance support Hucke's detention of appellant. As the Supreme Court recognized in *State v. Bobo*, 37 Ohio St.3d 177, 179 (1988), the "reputation of an area for criminal activity is an articulable fact upon which a police officer may legitimately rely" in determining whether to make an investigative stop. Furthermore, a defendant's movements, such as furtive gestures, can also be considered in analyzing whether a police officer had reasonable suspicion. *Id*. at 179-180. While a furtive gesture, standing alone, does not create probable cause for a search, reliance on such a clandestine gesture when other facts indicating a reasonable suspicion of criminal activity are also present is sufficient for a *Terry* stop. *Id*.; *London v. Edley*, 75 Ohio App.3d 30, 33 (12th Dist.1991). Finally, "although some degree of nervousness during interactions with police officers is not uncommon * * * nervousness can be a factor to weigh in determining reasonable suspicion." *State v. Jennings*, 10th Dist. Franklin No. 12AP-179, 2013-Ohio-2736, ¶ 13.

{¶ 18} Given Hucke's knowledge of the area, his observations while interacting with appellant, and his experience and training in detecting drug activity, we find Hucke had sufficient articulable suspicion that appellant possessed drugs to effectuate a *Terry* stop. Moreover, during the course of the *Terry* stop, Hucke observed the "off-white rocks" or "dope" in plain view as appellant attempted to conceal the drugs in his jacket pocket. "[T]he 'plain view' doctrine authorizes the seizure of contraband without a warrant if the initial

intrusion leading to discovery of the object was lawful and the incriminating or illegal nature of the items was immediately apparent." *Potter*, 2007-Ohio-4216 at ¶ 18. Once Hucke observed the drugs, he had probable cause to seize the contraband and arrest appellant. *See Potter* at ¶ 20; *State v. Jimenez*, 12th Dist. Warren No. CA2011-09-103, 2012-Ohio-3318, ¶ 17-18.

{¶ 19} For the foregoing reasons, we find no error in the trial court's denial of appellant's motion to suppress. Hucke's initial encounter with appellant was consensual, the subsequent *Terry* stop was supported by the totality of the circumstances, and appellant's arrest and the seizure of evidence was supported by probable cause.

{¶ 20} In reaching this determination, we find the two cases relied upon by appellant to be factually distinguishable and inapplicable to the case at hand. In *Cook*, 2004-Ohio-4793, the defendant had been walking along a public street with her left hand clenched when an officer detained her by using his police cruiser to impede her travel. *Id.* at ¶ 3, 15. In addition to asking the defendant questions, such as "what was going on" and "why was she walking eastbound," the officer ordered the defendant to "open up your hand so I can see what's inside of it." *Id.* at ¶ 14-15. The Second District held law enforcement lacked a reasonable articulable suspicion to justify detaining the defendant and the encounter between the officer and defendant was not consensual as "a reasonable person would not have felt free to ignore the order of a police officer and walk away." *Id.* at ¶ 16.

{¶ 21} We find the present case to be factually distinguishable from *Cook*, as appellant's path of travel was not interfered with in any way until *after* Hucke observed a plastic baggie protruding from appellant's hand. Further, Hucke did not order or command appellant to open his left hand. Rather, he merely asked appellant if he had anything in his hand and what was in his hand. Appellant was free to ignore Hucke's questioning and walk away until the point reasonable articulable suspicion for the *Terry* stop developed.

{¶ 22} In *Nealen*, 84 Ohio App.3d 235, the Eighth District held that an encounter between three plain-clothed police officers sitting in an unmarked police cruiser and a defendant walking through a high-crime area was a *Terry* stop that lacked the requisite suspicion to justify the stop. *Id.* at 238-243. The defendant, a young white male, was walking from an "all black" project courtyard to a parked car. *Id.* at 236. The officers pulled up beside him, identified themselves as police officers, and asked what he was doing and what he had clenched in his fist. *Id.* at 236-237. As the defendant attempted to enter his parked car, he dropped a rock of cocaine out of his hand and onto the ground. *Id.* The Eight District determined that the defendant's motion to suppress was properly granted as "[the] words 'police,' 'what are you doing,' and 'what do you have in your hand,' denote[d] an investigatory stop" when there was no "specific and articulable facts" to justify the stop. *Id.* at 238. In the Eighth District's opinion, "[t]he police wanted an answer; otherwise they would not have asked the questions after identifying themselves as policemen." *Id.* "Clearly, the police presence was intimidating, they expected an answer, and a reasonable person could assume he was not free to leave until the officers were satisfied with a response." *Id.* at 242.

{¶ 23} We disagree with the Eighth District's reasoning in *Nealen*. We do not believe that, simply because a police officer asks a question of an individual, that person is necessarily seized. *See Royer*, 460 U.S. at 497; *Potter*, 2007-Ohio-4216 at ¶ 13; *State v. Hurt*, 2d Montgomery No. 14882, 1995 WL 259176, *5 (May 5, 1995). "While it may be true that when a police officer (or any person) posits a question, he expects an answer, it does not always follow that the person to whom the question is directed is constrained to respond." *Hurt* at *5. Furthermore, the mere presence of a police officer, without more, may be intimidating, but it is not a seizure. *Id.*, citing *Michigan v. Chesternut*, 486 U.S. 567, 108 S.Ct. 1975 (1988). As we have previously stated, appellant's encounter with Hucke was consensual as appellant was free to walk away and ignore Hucke's questions regarding what,

if anything, appellant had in his hand.

{¶ 24} Accordingly, for the reasons set forth above, appellant's sole assignment of error is overruled.

{¶ 25} Judgment affirmed.

PIPER and M. POWELL, JJ., concur.