[Cite as *State v. Alexander-Lindsey*, 2016-Ohio-3033.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
LAWRENCE COUNTY

STATE OF OHIO,                          :
                                        :       Case No.  15CA11
        Plaintiff-Appellee,             :
                                        :
        vs.                             :       DECISION AND JUDGMENT
                                        :       ENTRY
TEGAN C. ALEXANDER-                     :
LINDSEY,                                :
        Defendant-Appellant.            :       **Released: 05/11/16**
_____

APPEARANCES:

Gene Meadows, Portsmouth, Ohio, for Appellant.

Brigham M. Anderson, Lawrence County Prosecuting Attorney, and Jeffrey
M. Smith, Assistant Prosecuting Attorney, Ironton, Ohio, for Appellee.
_____

McFarland, J.

{¶ 1} Tegan C. Alexander-Lindsey appeals the court's denial of her

motion to suppress evidence in the Lawrence County Court of Common

Pleas.  On appeal, Ms. Alexander-Lindsey asserts her right to be free from

unreasonable searches and seizures, pursuant to the Fourth and Fourteenth

Amendments of the United States Constitution, was violated when she was

stopped in Lawrence County, Ohio, in October 2014.  Thus, the trial court

erred when it overruled her motion to suppress evidence discovered when

she was stopped and detained.  Upon review, we find no merit to Appellant's

argument.  The trial court did not err.  Accordingly, we overrule Appellant's sole assignment of error and affirm the judgment of the trial court.

FACTS

{¶ 2}  On December 16, 2014, Appellant was indicted on five counts: (1) aggravated trafficking in drugs, R.C. 2925.03(A)(2)(C)(1)(d), a felony of the second degree; (2) possession of drugs, R.C. 2925.11(A)(C)(1)(c), a felony of the second degree; (3) tampering with evidence, R.C. 2921.12(A)(1)(B), a felony of the third degree; (4) furnishing false information to an officer issuing a traffic ticket, R.C. 4513.361(B) a misdemeanor of the first degree; and (5) possession of marijuana, R.C. 2925.11(A)(C0(3)(a), a minor misdemeanor.  The indictment arose from events which occurred on or about October 30, 2014, when Appellant made contact with Trooper Drew Kuehne of the Ohio State Highway Patrol.  On that date, Trooper Kuehne initiated a lawful traffic stop for a marked lanes violation on U.S. Route 52 in Lawrence County, Ohio.  During the stop and detention, troopers confiscated 363 oxycodone pills and 2 grams of marijuana.

{¶ 3}  Appellant was arraigned on December 17, 2014.  The parties engaged in discovery.  On February 19, 2015, Appellant filed a motion to suppress evidence.  On February 25, 2015, the trial court heard the motion.

The State presented Trooper Kuehne's testimony and a video recording of the stop.

{¶ 4}  At the suppression hearing, Trooper Kuehne testified he had been employed as a trooper for just less than 2 years.  He was assigned to the criminal patrol unit and worked as a K-9 handler of "Rocky."  The purpose of the unit is drug interdiction.  Trooper Kuehne testified as to his training and certification with Rocky.  Trooper Kuehne's additional relevant testimony will be set forth below.  A summary of the events captured on the video will also be set forth.

{¶ 5}  After hearing the arguments of counsel, the trial court overruled Appellant's motion by entry dated February 27, 2015.  On April 22, 2015, Appellant entered no contest pleas to all counts of the indictment.  She was sentenced to a term of imprisonment.  The judgment from which she appeals was entered on May 1, 2015.  The appeal was timely filed.

ASSIGNMENT OF ERROR

"I. THE TRIAL COURT VIOLATED THE DEFENDANT-
APPELLANT'S CONSTITUTIONAL RIGHT TO BE FREE
FROM UNREASONABLE SEARCHES AND SEIZURES IN
VIOLATION OF THE DEFENDANT-APPELLANT'S
FOURTH AND FOURTEENTH AMENDMENT RIGHTS AS
GUARANTEED IN THE UNITED STATES
CONSTITUTION."

A.  STANDARD OF REVIEW

{¶ 6} Our review of a trial court's decision on a motion to suppress presents a mixed question of law and fact. *State v. Gurley,* 4th Dist. Scioto No. 14CA3646, 2015-Ohio-5361, ¶ 16. See *State v. Roberts,* 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, at ¶ 100, citing *State v. Burnside,* 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, at ¶ 8. When considering a motion to suppress, the trial court acts as the trier of fact and is in the best position to resolve factual questions and evaluate witness credibility. *Id.* Accordingly, we defer to the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Landrum,* 137 Ohio App.3d 718, 722, 739 N.E.2d 1159 (4th Dist. 2000). Accepting those facts as true, we must independently determine whether the trial court reached the correct legal conclusion in analyzing the facts of the case. *Roberts* at ¶ 100, citing *Burnside* at ¶ 8.

## B.  LEGAL ANALYSIS

{¶ 7} "The Fourth Amendment to the United States Constitution and the Ohio Constitution, Article I, Section 14, prohibit unreasonable searches and seizures." *State v. Crocker*, 2015-Ohio-2528, 38 N.E.3d 369, ¶ 61, quoting *State v. Emerson*, 134 Ohio St.3d 191, 2012-Ohio-5047, 981 N.E.2d 787, ¶ 15. "This constitutional guarantee is protected by the exclusionary rule, which mandates exclusion of the evidence obtained from the

unreasonable search and seizure at trial." *Id.;* see also *State v. Lemaster,* 4th Dist. Ross No. 11CA3236, 2012-Ohio-971, ¶ 8 ("If the government obtains evidence through actions that violate an accused's Fourth Amendment rights, that evidence must be excluded at trial.").

{¶ 8} "An officer's temporary detention of an individual during a traffic stop constitutes a seizure of a person within the meaning of the Fourth Amendment * * *." *State v. Lewis*, 4th Dist. Scioto No. 08CA3226, 2008-Ohio-6691, ¶ 14; see also *State v. Eatmon,* 4th Dist. Scioto No. 12CA3498, 2013-Ohio-4812, ¶ 13 (quoting *Lewis*). "To be constitutionally valid, the detention must be reasonable under the circumstances." *Lewis* at ¶ 14. "While probable cause 'is certainly a complete justification for a traffic stop,' it is not required." *Eatmon* at ¶ 13, quoting *State v. Mays,* 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 23. "So long as 'an officer's decision to stop a motorist for a criminal violation, including a traffic violation, is prompted by a reasonable and articulable suspicion considering all the circumstances, then the stop is constitutionally valid.' " *Id.,* quoting *Mays* at ¶ 8. "Reasonable and articulable suspicion is a lower standard than probable cause." *Id*., citing *Mays* at ¶ 23. " 'To conduct an investigatory stop, the officer must be able to point to specific and articulable facts which, taken together with rational inferences derived from

those facts, give rise to a reasonable suspicion that the individual is engaged or about to be engaged in criminal activity.' " *Id.*, quoting *State v. Kilbarger,* 4th Dist. Hocking No. 11CA23, 2012-Ohio-1521, ¶ 15. "The propriety of an investigative stop by a police officer must be viewed in light of the totality of the surrounding circumstances." *Id.,* quoting *State v. Freeman,* 64 Ohio St.2d 291, 414 N.E.2d 1044 (1980), paragraph one of the syllabus.

The Initial Traffic Stop

{¶ 9} Since Appellant challenges each "step" of her detention and subsequent search and seizure, we begin our analysis with Trooper Kuehne's stop. At the suppression hearing, Trooper Kuehne testified on October 30, 2014, he was on patrol in a marked cruiser and in uniform when he came in contact with Appellant. He identified her for the record. Trooper Kuehne was traveling eastbound on U.S. 52, in the left lane, when he noticed Appellant's vehicle cross the yellow line on the left side of the road near mile post 8. As they continued east, Appellant changed lanes across the white line on the right side of the road. Trooper Kuehne ran the license plate and was advised the car was registered to someone from Michigan.

{¶ 10} Trooper Kuehne initiated a traffic stop near mile post 11. He had a video camera in his patrol car that was recording the traffic stop;

however, the camera wasn't activated in time to catch the initial violation.[1] At this point, a CD of the recording of the traffic stop was offered as State's Exhibit 1, and accepted into evidence without objection. The video shows the car was pulled over about 2 minutes after the video began.

{¶ 11} At the time Trooper Kuehne initiated the stop of Appellant's vehicle, he had observed a marked lanes violation. *State v. Debrossard,* 4th Dist. Ross No. 13CA3395, 2015-Ohio-1054, ¶ 13. A police officer may stop the driver of a vehicle after observing a de minimis violation of traffic laws. *State v. Guseman,* 4th Dist. Athens No. 08CA15, 2009-Ohio-952, ¶ 20; citing *State v. Bowie*, 4th Dist. Washington No. 01CA34, 2002-Ohio-3553, ¶ 8, 12, and 16; citing *Whren v. United States,* 517 U.S. 806, 116 S.Ct. 1769 (1996). See also, *Dayton v. Erickson,* 76 Ohio St.3d 3, 655 N.E.2d 1091 (1996), syllabus. A marked-lanes traffic violation suffices. See, *Crocker, supra,* at ¶ 6; *State v. Harlow,* 4th Dist. Washington No. 13CA29, 2014-Ohio-864, ¶ 14; R.C. 4511.33. Although the initial violation was not captured on the dashboard video camera recording, the trial court was free to believe Trooper Kuehne's testimony. His testimony, combined with the video recording, demonstrated his reasonable articulable suspicion that

---

[1] The trooper testified when he flips on the lights to activate the camera, the recording device backs up a certain interval of time. After the lights are activated, his belt microphone and a microphone inside the patrol car activate.

Appellant committed a traffic violation.  Therefore, the trial court found, as do we, that the traffic stop was constitutionally valid.

The Scope and Duration of the Stop

{¶ 12}  Appellant's counsel argued that the continuation of the stop itself and the extended search was racial profiling.  He argued the video shows the trooper saying at approximately 11 minutes and 20 seconds into the stop, "I'm concerned because you all are coming down here from Detroit."  Counsel argued that was the real reason Trooper Kuehne expanded the stop into a detention and search.[2]

{¶ 13}  "The scope and duration of a routine traffic stop 'must be carefully tailored to its underlying justification * * * and last no longer than is necessary to effectuate the purpose of the stop.' " *Crocker, supra,* at 63, quoting *State v. Jones,* 4th Dist. Washington No. 03CA61, 2004-Ohio-7280, 2004 WL 3090198, ¶ 22.  " 'When a law enforcement officer stops a vehicle for a traffic violation, the officer may detain the motorist for a period of time sufficient to issue the motorist a citation and to perform routine procedures such as a computer check on the motorist's driver's license, registration, and vehicle plates.' " *State v. Houston,* 4th Dist. Scioto No. 12CA3472, 2013-

---

[2] Counsel brought up an argument, not in his motion, that the officers held Appellant for an extended period time, which caused her to urinate and in doing so, incriminate herself by pushing the drugs outside of her body.  Counsel does not assert this position on appeal.

Ohio-686, 2013 WL 772800, ¶ 25, quoting *State v. Aguirre,* 4th Dist. Gallia

No. 03CA5, 2003-Ohio-4909, at ¶ 36, citing *State v. Carlson,* 102 Ohio

App.3d 585, 598, 657 N.E.2d 591 (9th Dist. 1995). "In determining if an

officer completed these tasks within a reasonable length of time, the court

must evaluate the duration of the stop in light of the totality of the

circumstances and consider whether the officer diligently conducted the

investigation." *Aguirre* at ¶ 36, citing *State v. Cook,* 65 Ohio St.3d 516, 521-

522, 605 N.E.2d 70 (1992); *United States v. Sharpe,* 470 U.S. 675, 105 S.Ct.

1568, (1985).

{¶ 14} Officers can order a driver and a passenger to exit the vehicle,

even absent any additional suspicion of a criminal violation. *State v. Forest,*

146 Ohio Misc.1, 2008-Ohio-1547, 884 N.E. 2d 1147 (C.P.), ¶ 8, citing

*Pennsylvania v. Mimms*, 434 U.S. 106, 98 S.Ct. 330 (1977); *Maryland v.*

*Wilson*, 519 U.S. 408, 117 S.Ct. 882, (1997).  Appellant contends that once

she was stopped and ordered to exit the vehicle, Trooper Kuehne lacked the

requisite suspicion to justify a pat-down for weapons.  Appellant argues the

trooper's testimony that Appellant and her passenger were "making [him]

nervous" did not justify a search for weapons.  Appellant argues the

movement of her hands could have been for a noncriminal purpose and the

form-fitting yoga pants she was wearing would have revealed an obvious weapon.

{¶ 15} Trooper Kuehne's suppression hearing testimony was that when he approached the passenger's side of the vehicle, he observed two females in the front seat. He advised Appellant, the driver, of the traffic violation. Immediately he noticed both women were very nervous. He noticed the Appellant's heart beating from the pulse in the front of her chest/neck area. It appeared she was breathing heavy. Neither woman made eye contact with him.

{¶ 16} Trooper Kuehne asked for the license and registration. When Appellant handed them to him, he noticed her right hand was shaking. Her voice trembled. Trooper Kuehne had difficulty ascertaining the ownership of the vehicle.

{¶ 17} As Trooper Kuehne spoke to Appellant, it appeared her left hand was moving around the crotch area of her pants. Appellant was wearing a large jacket or throw, a shirt, and tights or yoga pants. Her clothing was dark. He shined his light to see what it was she was moving around the front of her pants, but he couldn't really see.

{¶ 18} Trooper Kuehne testified he was immediately concerned because the passenger appeared nervous, which is not something he

normally encounters on a routine traffic stop. Both women were from

Michigan. Trooper Kuehne requested Appellant to step out of the vehicle.

{¶ 19} The video demonstrates that when Trooper Kuehne is talking

with the women on the passenger side of the car, about 2.5 minutes into the

conversation, he tells her he is going to have her step out of the car. He then

goes around to the other side. Trooper Kuehne testified he came around to

the driver's side and opened her door. When he did he noticed her right

hand was moving toward the front of her pants and around her waistband

area.

{¶ 20} The video also shows Appellant trailed behind him and

testified he turned around and allowed her to step in front of him. He then

noticed her left hand was moving towards the front of her body. He asked

what she was reaching for and she said "Nothing." He then said "I think you

are reaching for something in your pants." Appellant then advised she was

on her menstrual cycle. Trooper Kuehne testified he didn't think that was a

valid answer for reaching in her pants during a traffic stop. At this point, the

trooper became concerned for officer safety and requested permission from

Appellant to perform a pat-down search for weapons. We begin by

analyzing whether, at that point, Trooper Kuehne had reasonable suspicion

that Appellant was armed and dangerous, in order to justify a *Terry* pat-down for weapons.

{¶ 21} Even if a defendant is constitutionally required to step from a vehicle, law enforcement is not thereby authorized to perform a pat-down search. *State v. Evans*, 67 Ohio St.3d 405, 618 N.E.2d 162 (1993); *State v. Vineyard,* 2nd Dist. Montgomery No. 22266, 2008-Ohio-204, ¶ 13.  In *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, (1968), the United States Supreme Court recognized that a police officer may make a limited search in order to protect himself and the public.  " 'When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others,' he may conduct a limited protected search for concealed weapons. * * * The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence, and thus the frisk for weapons might be equally necessary and reasonable, whether or not carrying a concealed weapon violated any applicable * * * law.  So long as the officer is entitled to make a forcible stop, and has reason to believe that the suspect is armed and dangerous, he may conduct a weapons search limited in scope to this protective purpose." *Adams v. Williams*, 407 U.S. 143, 145-146, 92 S.Ct. 1921, (1972), quoting *Terry*, 392 U.S. at 24, 30, 88 S.Ct. 1868.

{¶ 22} Similarly, the Supreme Court of Ohio has pointed out that " '[a] search for weapons in the absence of probable cause to arrest, however, must, like any other search, be strictly circumscribed by the exigencies which justify its initiation. * * * Thus, it must be limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby * * *.' " *Forest, supra,* at ¶ 11, quoting *State v. Evans,* 67 Ohio St.3d at 414, 618 N.E.2d 162, quoting *Terry*, 392 U.S. at 25-26, 88 S.Ct. 1868.  This appellate court has previously recognized that " 'police officers face an inordinate risk when they approach an automobile during a traffic stop.' " *State v. Hansard,* 4th Dist. Scioto No. 07CA3177, 2008-Ohio-3349, ¶ 26; citing *State v. Williams,* 94 Ohio App.3d 538, 541 N.E.2d 239 (8th Dist. 1994).  Moreover, Ohio courts have long recognized that persons who engage in illegal drug activities are often armed with a weapon. *Hansard*, *supra,* citing *Evans, supra,* at 413.  "[T]he right to frisk is virtually automatic when individuals are suspected of committing a crime, like drug trafficking, for which they are likely to be armed." *Id.*; citing *State v. Williams,* 51 Ohio St.3d 58, 554 N.E.2d 108 (1990) and *United States v. Ceballos* (E.D.N.Y.1989), 719 F.Supp. 119, 126 ("The nature of narcotics trafficking today reasonably warrants the conclusion that a suspected dealer may be armed and dangerous.").

{¶ 23} Trooper Kuehne testified when he initially approached the vehicle, both women were "nervous." Trooper Kuehne admitted when he pulls people over for a traffic stop, they are slightly nervous. While "[some] degree of nervousness during interactions with police officers is not uncommon, * * * nervousness can be a factor to weigh in determining reasonable suspicion." *State v. Simmons,* 2013-Ohio-5088, 5 N.E.3d 670, ¶ 17, quoting *State v. Jennings,* 2013-Ohio-2736, 993 N.E.2d 858, ¶ 13. Trooper Kuehne further testified he could see the pulse in Appellant's neck and that she was breathing heavily. We view these as additional facts supporting the broad statement that she was nervous. Trooper Kuehne's interaction with Appellant at this point was in the vehicle and was not captured on the video.

{¶ 24} Trooper Kuehne also testified to Appellant's "furtive" movements while she was still in the vehicle, hands along the waistband of her pants and moving her left hand along her crotch area. He acknowledged that he shined the light on her but could not see anything, due to her dark-colored clothing. Again, these movements were not captured on the video. When Appellant exited the vehicle, Trooper Kuehne testified it took her a long time to get out and when she did, she turned her body away from him and kept tugging at her pants. Trooper Kuehne told Appellant she was

actually making him nervous.  A defendant's movements, such as furtive gestures, can be considered in analyzing whether a police officer had reasonable suspicion. *Simmons, supra,* citing *State v. Bobo,* 37 Ohio St.3d 177, 524 N.E.2d 488, 489.  While a furtive gesture, standing alone, does not create probable cause for a search, reliance on such a clandestine gesture when other facts indicating a reasonable suspicion of criminal activity are also present is sufficient for a *Terry* stop. *Id. Simmons, supra.*

{¶ 25}  Then, Trooper Kuehne testified at the side of the vehicle, he asked Appellant if she had a weapon and she responded "No."  He asked if he could pat her down to make sure she had no weapons and she refused. Appellant advised she thought he needed a female to do a pat-down search. During this time, Appellant was still acting nervous.  She also kept trying to turn so he could not see the front of her body.  He testified he asked her to stop turning away and stop reaching in her pants.

{¶ 26}  Based on the above, we find Trooper Kuehne had reasonable suspicion that Appellant was armed, justifying a pat-down search for weapons.  Trooper Kuehne is assigned to the drug interdiction unit and had other factors to consider.  Appellant was unable to give him clear information as to the ownership of the vehicle when she was initially questioned.  Trooper Kuehne's testimony is that while she was still inside

the car, her hands were moving along her waistband and along the crotch area. The fact that he specified the crotch area has significance in that we have seen various cases wherein a female drug mule concealed drugs in the vagina.[3] And, although her pants were tight-fitting yoga pants, their dark color could obscure the outline or bulge of a weapon. He testified he was unable to see all of her dark pants.

{¶ 27} Furthermore, Trooper Kuehne advised the passenger, later in the video, that they were traveling on a major drug route between Detroit and Huntington, West Virginia. It has been held that "[t]he reputation of an area for criminal activity is an articulable fact upon which a police officer may legitimately rely * * *." *Simmons, supra,* at ¶ 17, quoting *Bobo, supra.* As referenced above in *Hansard,* when individuals are suspected of drug trafficking, they are likely to be armed.

{¶ 28} Given the previously recognized correlation between weapons and drug activity, given Trooper Kuehne's knowledge of the highway as being a major drug route, and given his observations while interacting with Appellant both inside and outside of the vehicle, we find under the totality of the circumstances that Trooper Kuehne had reasonable suspicion that

---

[3] A drug "mule" is a driver, courier, or middle person who transports drugs for another. See *State v. Wilkinson,* 8th Dist. Cuyahoga No. 100859, 2014-Ohio-5791, ¶ 31; *State v. Rodriguez,* 6th Dist. Wood No. WD-08-013, 2009-Ohio-4280, at ¶ 21; *State v. Gurley,* 4th Dist. Scioto No. 14CA3646, 2015-Ohio-5361, -- N.E.-- (Dec. 17, 2015), ¶ 3; *State v. Barry,* 2015-Ohio-5499, - -N.E.3d - - (Dec. 30, 2015), ¶ 5; *State v. Wilkinson,* 8th Dist. Cuyahoga No. 100859, 2014-Ohio-5791, ¶ 53.

Appellant was likely to be armed. The relatively brief interaction captured on the video causes this to be a close question. This is not a case where there are additional indicators such as the odor of marijuana emanating from the vehicle, the presence of multiple cell phones, or the overwhelming scent of air fresheners. However, we decline to second-guess Trooper Kuehne's testimony as to Appellant's actions not recorded on video. We find Trooper Kuehne was justified in requesting a limited *Terry* pat-down during the brief time period of interaction with Appellant, for the purpose of discovering weapons and officer safety.[4]

Continued Detention

{¶ 29} Appellant next argues if the search was justified on the basis of Trooper Kuehne's alleged nervousness, the search of Appellant's clothing and seizure of drugs was unlawful because the officers unreasonably prolonged her detention and exceeded the scope of a protective frisk. "An officer may expand the scope of the stop and may continue to detain the vehicle without running afoul of the Fourth Amendment if the officer discovers further facts which give rise to a reasonable suspicion that additional criminal activity is afoot." *State v. Shook,* 4th Dist. Pike No. 13CA841, 2014-Ohio-3403, at ¶ 29, quoting *State v. Rose,* 4th Dist.

---

[4] Officers do not have to request consent to perform a *Terry* pat-down, although the case law reveals that many times, they do in fact make the request.

Highland No. 06CA5, 2006-Ohio-5292, ¶ 17, citing *State v. Robinette,* 80

Ohio St.3d 234, 240, 685 N.E.2d 762 (1997).

{¶ 30} Trooper Kuehne testified he asked Appellant to move to the

front of the vehicle and again asked if he could conduct a pat-down search.

Again she refused.  He still observed all the nervous behaviors.  At this

point, Trooper Mark Dunn arrived, contacted dispatch, and asked for

criminal history on the women.  Trooper Kuehne inquired as to the purpose

of the women's travel.

{¶ 31} Appellant advised she was coming from Detroit on her way to

Charleston, West Virginia, to stay with her uncle.  She advised her brother

was incarcerated somewhere in the area and she was going to try to get

information about his situation.  At this point the troopers switched places

and Trooper Kuehne spoke to the passenger.

{¶ 32} Appellant's passenger was Marcia Monday.  Monday advised

they were coming from Detroit to stay with Appellant's uncle for the

weekend.  She only said she was "hanging out" and "along for the ride."

Her explanation for the purpose of their trip did not include anything about

Appellant's brother.  Trooper Kuehne pointed out that the women were traveling on a "major drug route."[5]

{¶ 33}  "In determining whether a detention is reasonable, the court must look at the totality of the circumstances." *Debrossard, supra,* at ¶ 21, quoting, *State v. Matteucci,* 11th Dist. Lake No. 2001-L-205, 2003-Ohio-702, ¶ 30.  The totality of the circumstances approach "allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.' " *State v. Ulmer,* 4th Dist. Scioto No. 09CA3283, 2010-Ohio-695, ¶ 23; *United States v. Arvizu,* 534 U.S. 266, 273, 122 S.Ct. 744 (2014).  Thus, when an appellate court reviews a police officer's reasonable suspicion determination, "the court must give 'due weight' to factual inferences drawn by resident judges and local law enforcement officers." *Ulmer* at ¶ 23; *Ornelas v. United States,* 517 U.S. 690, 699, 116 S.Ct. 1657 (1996).

{¶ 34}  The *Robinette* court explained, at paragraph one of the syllabus:

> "When a police officer's objective justification to continue detention of a person * * * is not related to the purpose of the original stop, and when that continued detention is not based on

---

[5] Trooper Kuehne testified both women were Mirandized before they were questioned.  The video recording is difficult to hear while the trooper is speaking with Ms. Monday.  Our review indicates Appellant had been Mirandized prior to questioning about the trip.

any articulable facts giving rise to a suspicion of some illegal activity justifying an extension of the detention, the continued detention to conduct a search constitutes an illegal seizure."

* * *

Conversely, "if a law enforcement officer, during a valid investigative stop, ascertains 'reasonably articulable facts giving rise to a suspicion of criminal activity, the officer may then further detain and implement a more in-depth investigation of the individual.' " *Shook, supra, Rose* at ¶ 17, quoting *Robinette* at 241.

Moreover, "[r]ecognizing that 'detention, not questioning, is the evil' at issue, * * * so long as the traffic stop is valid, 'any questioning which occurs during the detention, even if unrelated to the scope of the detention, is valid so long as the questioning does not improperly extend the duration of the detention.' " *Shook, supra*, at ¶ 30, quoting *State v. Chagaris,* 107 Ohio App.3d 551, 556-557, 669 N.E.2d 92 (9th Dist.1995), quoting *State v. Wright,* 9th Dist. Medina No. 2371-M, 1995 WL 404964, *3-4 (June 28, 1995).

{¶ 35} In our view, the totality of the circumstances supports Trooper Kuehne's continued questioning and detention of Appellant. Both women, especially Appellant, demonstrated extreme nervousness. Appellant, in particular, made furtive movements inside and outside of the vehicle. She was unable to explain the ownership of the vehicle. Continued questioning of the women elicited inconsistent stories regarding the purpose of their trip

from Detroit to West Virginia. Trooper Kuehne, assigned to the drug interdiction unit, held experience and training which allowed him to make inference and deductions from the cumulative information available to him. He recognized the women were traveling a major drug route. Based on our review of the video and Trooper Kuehne's suppression testimony, we find Appellant's continued to detention for questioning was lawful.

<u>The Canine Walkaround and Sniff</u>

{¶ 36} Appellant argues Trooper Kuehne prolonged the traffic stop in order to deploy the canine unit. A lawfully detained vehicle may be subjected to a canine check of the vehicle's exterior even without the presence of a reasonable suspicion of drug-related activity. *Forest, supra,* at ¶ 18; *State v. Rusnak,* 120 Ohio App.3d 24, 28, 696 N.E.2d 633 (6th Dist. 1997). Both Ohio courts and the United States Supreme Court have determined that "the exterior sniff by a trained narcotics dog to detect the odor of drugs is not a search within the meaning of the Fourth Amendment to the Constitution." *State v. Jones*, 4th Dist. Washington No. 03CA61, 2004 WL 3090198, ¶ 24; *United States v. Place,* 462 U.S. 696, 103 S.Ct. 2637 (1983). Thus, a canine check of a vehicle may be conducted during the time period necessary to effectuate the original purpose of the stop. *Jones,* at ¶ 24. During a continued, lawful detention of a vehicle, as discussed above,

officers are not required to have a reasonable, articulable suspicion of criminal activity in order to call in a canine unit to conduct a canine sniff on the vehicle. *Forest, supra,* at ¶ 22; See *State v. Feerer,* 12th Dist. Warren No. CA2008-05-064, 2008-Ohio-6766, ¶ 10. "Because the 'exterior sniff by a trained narcotics dog is not a search within the meaning of the Fourth Amendment to the Constitution,' a canine sniff of a vehicle may be conducted even without the presence of such reasonable, articulable suspicion of criminal activity so long as it is conducted during the time period necessary to effectuate the original purpose of the stop." *Id.* See also, *United States v. Place,* 462 U.S. 696, *supra.* "A drug sniffing dog used to detect the presence of illegal drugs in a lawfully detained vehicle does not violate a reasonable expectation of privacy and is not a search under the Ohio Constitution." *State v. Waldroup,* 100 Ohio App.3d 508, 514, 654 N.E.2d 390 (12th Dist. 1995).

{¶ 37} After obtaining conflicting information from the women, Trooper Kuehne testified he ordered Appellant back inside her car and deployed his K-9, Rocky, to sniff the vehicle. Trooper Kuehne's testimony and the video recording reveals that on the bottom door seam of the front passenger door, Rocky's behavior changed. He alerted, consistent with recognition of the presence of narcotics.

{¶ 38} Trooper Kuehne is a canine handler. Rocky was with him in his cruiser. There was no delay in conveying the dog to the location. Trooper Kuehne deployed the dog immediately after receiving, in addition to all the other suspicious behaviors and factors previously discussed, conflicting information regarding the purpose of the trip. The video reveals that within a few seconds Rocky alerted on the passenger side of the vehicle.

{¶ 39} Again, based on our review of the video camera recording and Trooper Kuehne's testimony, we find Appellant's detention was not prolonged. Trooper Kuehne deployed Rocky approximately 22 minutes into the stop, after the women gave inconsistent stories. We find Appellant's vehicle was lawfully detained at the time Trooper Kuehne deployed the canine.

The Search

{¶ 40} Appellant asserts the seizure of the drugs here was not justified under the "plain-feel" doctrine. Appellant argues the officers manipulated the bulge and unlawfully extended to pat-down beyond the scope of a permissible search for weapons. We disagree.

{¶ 41} Trooper Kuehne testified Rocky quickly alerted to the presence of drugs and, after securing him, Trooper Kuehne asked Appellant to again step out of the vehicle and have a seat in his patrol car. He advised

her he would have to conduct a pat-down search because of the connection between drugs and weapons. He told her how to stand, with her hands straight out to the side. Every time he tried to start the pat-down, Appellant would bring her hands down as if guarding. Then Appellant became frantic and advised she was scared and "peeing herself." Trooper Kuehne and Appellant walked to open the trunk of her car to get a towel. While at the trunk, Trooper Kuehne was startled by Appellant and thereafter advised he needed to begin the pat-down search. The video supports the trooper's testimony.

{¶ 42} Trooper Kuehne testified when he began to perform the pat-down, Appellant moved her hands again to the front of her pants. Trooper Kuehne grabbed her wrists and tried to handcuff her while she moved towards the guardrail. He testified her other hand was still inside her pants. Trooper Dunn assisted Trooper Kuehne and Appellant resisted. The troopers took Appellant to the ground to handcuff her and stood her up again. The video demonstrates scuffling with Appellant which took place, at times, completely off camera.

{¶ 43} The video recording reveals, and Trooper Kuehne testified, that Trooper Dunn said he could "see something" in the back of Appellant's pants. Trooper Kuehne testified it was a large bulge in the back of her pants

which appeared to be pills in packaging material. At first Appellant denied having anything. Trooper Kuehne requested she remove the bulge. Trooper Kuehne testified Appellant reached into her pants for an unreasonable amount of time and he realized she wasn't removing anything. He grabbed her wrist and pulled her hand out. Again, although some of the conversation is heard on the video camera, it is difficult to see what is occurring. Trooper Kuehne testified Appellant had long fingernails. Eventually she pulled out a broken latex condom. Immediately blue pills, oxycodone, were scattered on the ground.

{¶ 44} Trooper Kuehne testified by this time, other troopers had arrived. He called the patrol post, advised a female officer of the situation, and Appellant and her passenger were eventually transported to the local post where a female assisted with obtaining the contraband. Ultimately 348 blue oxycodone tablets and 15 green oxycodone tablets were confiscated, along with a baggie of marijuana, approximately 2 grams, which the passenger had in her bra.

{¶ 45} Although *Terry* limits the scope of the search to weapons, the discovery of other contraband during a lawful *Terry* search will not necessarily preclude its admissibility. In *Minnesota v. Dickerson,* 508 U.S. 366, 113 S.Ct. 2130 (1993), the United States Supreme Court adopted the

"plain feel" doctrine as an extension of the "plain view" doctrine. The Supreme Court stated: "If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere (sic) in the plain view context." *Id.* at 375376. If the illegal nature of the suspicious object is not immediately apparent, police are not permitted to continue touching, feeling or manipulating the object to identify its nature. *Id.*

{¶ 46} In the case sub judice, the video recording demonstrates that Appellant did begin to urinate, as testified to by Trooper Kuehne. Thereafter, as he started to handcuff Appellant, she was not cooperating and matters escalated into a struggle. Apparently the bulge in Appellant's pants loosened or moved after she urinated. When the officer stood her up after the struggle, the bulge was apparent. The video recording demonstrates that Trooper Kuehne repeatedly told her to remove the bulge and that she agreed to. However, Trooper Kuehne suspected she was attempting to tamper or damage the evidence in the bulge. It does not appear that the troopers touched or manipulated the bulge when they first viewed it. However,

Trooper Kuehne testified he grabbed her wrist when it appeared she was trying to tamper with the evidence. At that point, Appellant caused the pills to fall to the ground.

{¶ 47} Trooper Kuehne did not actually perform a pat-down which led to confiscation of the pills. Appellant, while being placed in handcuffs, caused the object to come into the troopers' view. Trooper Kuehne testified the bulge appeared to be pills in packaging material. The object was immediately apparent and we find its warrantless seizure was justified as being in plain view.

{¶ 48} For the foregoing reasons, we find the trial court did not err when it overruled Appellant's motion to suppress. As such, we find no merit to Appellant's sole assignment of error which is hereby overruled. We affirm the judgment of the trial court.

**JUDGMENT AFFIRMED.**

## <u>JUDGMENT ENTRY</u>

It is ordered that the JUDGMENT BE AFFIRMED and costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Lawrence County Common Pleas Court to carry this judgment into execution.

<u>IF</u> A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted.  The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court.  If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J.:     Concurs in Judgment and Opinion.
Harsha, J.:   Concurs in Judgment Only.

For the Court,

BY: _____
Matthew W. McFarland, Judge

**NOTICE TO COUNSEL**
**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**