[Cite as *Willowick v. Osborne*, 2019-Ohio-3235.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

STATE OF OHIO,                        :        **O P I N I O N**
CITY OF WILLOWICK,

                                      :

         Plaintiff-Appellee,

                                      :        **CASE NOS. 2018-L-124**
      - vs -                                 **2018-L-125**
                                      :        **2018-L-126**

CHRISTOPHER JOHN OSBORNE,

                                      :

         Defendant-Appellant.

Criminal Appeals from the Willoughby Municipal Court, Case Nos. 2018 TRC 00158 A, 2018 TRC 00158 B, and 2018 TRC 00158 C.

Judgment: Affirmed.

*Donald J. Ezzone*, Parkhill Professional Building, 35104 Euclid Avenue, Willoughby, OH 44094 (For Plaintiff-Appellee).

*Patrick D. Quinn*, Quinn Legal Associates, 2802 SOM Center Road, Suite 102, Willoughby, OH 44094, and *Joseph Hada*, 1392 SOM Center Road, Mayfield Heights, OH 44124 (For Defendant-Appellant).

MARY JANE TRAPP, J.

{¶1} Appellant, Christopher John Osborne ("Mr. Osborne"), appeals the judgment of the Willoughby Municipal Court denying his motion to suppress following his pleas of no contest to and convictions for speeding and two counts of operating a vehicle under the influence of alcohol ("OVI").

{¶2} Mr. Osborne argues (1) the police officer did not have reasonable suspicion to justify field sobriety tests, (2) the City of Willowick (the "city") did not establish that the

officer administered field sobriety tests in substantial compliance with National Highway Traffic Safety Administration ("NHTSA") standards, (3) the officer did not have probable cause to arrest Mr. Osborne for OVI, and (4) the city did not demonstrate that the officer administered a breath test in substantial compliance with the Ohio Revised Code and the Ohio Administrative Code.

{¶3} After a careful review of the record and pertinent law, we find (1) the police officer's decision to conduct field sobriety tests was justified by specific, articulable facts, (2) any possible error in finding substantial compliance with NHTSA standards was harmless, (3) the officer had probable cause to arrest Mr. Osborne for OVI, (4) Mr. Osborne's motion to suppress did not provide the city with adequate notice of the issues in dispute in relation to the breath test; and (5) with respect to Mr. Osborne's specific challenges to the breath test, the city demonstrated substantial compliance.

{¶4} For the reasons that follow, we affirm the judgment of the Willoughby Municipal Court.

### Substantive and Procedural History

{¶5} On January 11, 2018 at approximately 1:27 a.m., Officer Jacob Cook ("Officer Cook") of the Willowick Police Department observed Mr. Osborne's vehicle traveling westbound on State Route 2 in the City of Willowick, Ohio, at a rate of speed of 88 m.p.h. in a 60 m.p.h. zone. Officer Cook initiated a traffic stop for the speeding violation, and Mr. Osborne pulled over to the left side of the roadway rather than the right side.

{¶6} After approaching the driver's side window of the vehicle, Officer Cook detected the odor of alcoholic beverage and slightly slurred speech. Mr. Osborne admitted he had been at the Handle Bar in the City of Eastlake where he drank at least

2

three Long Island Iced Teas. At some point, Officer Cook also noticed that Mr. Osborne's eyes were bloodshot.

{¶7} Officer Cook instructed Mr. Osborne to exit the vehicle so he could conduct field sobriety tests. Officer Cook proceeded to administer the horizontal gaze nystagmus ("HGN") test, where he observed all six clues of impairment. He next administered the one-leg stand, where he observed two clues of impairment, although this did not constitute a failed test. Finally, he administered the walk-and-turn, where he observed six clues of impairment. Officer Cook placed Mr. Osborne under arrest for OVI and took him to the police station.

{¶8} At the police station, Mr. Osborne provided two breath samples on the Intoxilyzer 8000 following the expiration of a 20-minute observation period. During the collection of both samples, Officer Cook observed that Mr. Osborne's breath alcohol concentration ("BAC") was measuring above 0.190.

{¶9} The printer attached to the Intoxilyzer failed to print the test results immediately following the test. Therefore, Officer Cook reported on the applicable state reporting form (BMV-2255) that Mr. Osborne's BAC test result was 0.190. After Mr. Osborne posted bond and was released, another officer was able to retrieve a printout of the test results from the Intoxilyzer's internal printer, which showed a BAC of 0.201. Officer Cook crossed out ".190" on the BMV-2255, wrote ".201," and initialed it.

{¶10} Mr. Osborne was charged with OVI in violation of R.C. 4511.19(A)(1)(a), OVI in violation of R.C. 4511.19(A)(1)(h), and speeding in violation of section 333.03 of the Codified Ordinances of the City of Willowick. Mr. Osborne initially pleaded not guilty.

{¶11} After several continuances and a change of counsel, Mr. Osborne filed a motion to suppress, alleging that the police did not have reasonable suspicion to stop his

vehicle, unjustifiably expanded the scope of the stop to require field sobriety tests, did not conduct the field sobriety tests in compliance with the NHTSA rules and regulations, did not administer the breath test in compliance with R.C. 4511.19 and Ohio Adm.Code Chapter 3701, and that the breath test was inadmissible under Evid.R. 702.

{¶12} At the hearing on the motion, Mr. Osborne waived his challenge to the officer's initial stop of his vehicle. Following the hearing, the trial court issued a judgment entry denying Mr. Osborne's motion to suppress. The trial court found that the initial traffic stop was justified based on the officer's observation of the speed violation and that the officer possessed reasonable and articulable suspicion to continue the detention of Mr. Osborne and require field sobriety testing based on the odor of alcohol, slurred speech, the time of night, excessive speed, Mr. Osborne's admission to consuming alcoholic beverages prior to driving, and the officer's previous experience in dealing with drunk drivers.

{¶13} The trial court also found that the city established substantial compliance regarding the field sobriety tests, and they were admissible at trial as to the officer's observations. The trial court noted that the tests were not conclusive as evidence of impairment, since the one-leg stand was not a failed test.

{¶14} The trial court further found that probable cause existed for Mr. Osborne's arrest based on his excessive speeding, the odor of alcohol, admission of drinking alcoholic beverages, observations during the field sobriety testing, and slurred speech. With regard to the breath test, the trial court referenced Mr. Osborne's "boilerplate" motion to suppress but found that the city had met its burden of substantial compliance.

{¶15} Mr. Osborne subsequently entered pleas of no contest to the three charges. As part of his sentence, the trial court imposed three days in jail.

4

{¶16} Mr. Osborne filed separate appeals for each of his three convictions, which we consolidated, sua sponte. We also granted Mr. Osborne's motion to stay execution of his three-day jail sentence during the pendency of his appeal.

{¶17} Mr. Osborne raises the following four assignments of error:

{¶18} "[1.] The trial court erred in finding that reasonable articulable suspicion existed for the officer to expand the scope of the investigation.

{¶19} "[2.] The trial court erred in finding that the city proved that the officer administered the standardized field sobriety tests in substantial compliance with the NHTSA standards in effect at the time the tests were given pursuant to R.C. 4511.19(D)(4)(b).

{¶20} "[3.] The trial court erred in finding that the city proved that the officer had probable cause to arrest the defendant in light of the admiisble [sic] evidence.

{¶21} "[4.] The trial court erred in finding that the city proved the city showed substantial compliance with the Ohio Revised Code and the Ohio Administrative Code for the breath test to be admissible at trial."

## Jurisdiction

{¶22} Although Mr. Osborne pleaded no contest to the charges against him, a plea of no contest does not waive a defendant's appeal from an adverse ruling on a motion to suppress. Crim.R. 12(I).

## Standard of Review

{¶23} Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶8. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. *Id*.,

5

citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. *Id.*, citing *State v. Fanning*, 1 Ohio St.3d 19, 20 (1982). The appellate court must then independently determine, without deference to the conclusions of the trial court, whether the facts satisfy the applicable legal standard. *Id.*, citing *State v. McNamara*, 124 Ohio App.3d 706, 707 (4th Dist.1997).

### Reasonable Suspicion

**{¶24}** In his first assignment of error, Mr. Osborne claims Officer Cook was not justified in requiring him to perform field sobriety tests. We disagree.

**{¶25}** The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution guarantee the right to be free from unreasonable searches and seizures. (Citation omitted.) *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, ¶7. When a police officer observes a traffic violation, he or she is justified in initiating a limited stop for the purpose of issuing a citation. *State v. Brickman*, 11th Dist. Portage No. 2000-P-0058, 2001 WL 635954, *2 (June 8, 2001). However, a request that a driver perform field sobriety tests constitutes a greater invasion of liberty than the initial stop, and "must be separately justified by specific, articulable facts showing a reasonable basis for the request." *State v. Evans*, 127 Ohio App.3d 56, 62 (11th Dist.1998), citing *State v. Yemma*, 11th Dist. Portage No. 95-P-0156, 1996 WL 495076, *3 (Aug. 9, 1996). Whether a request to perform field sobriety tests was reasonable is to be considered under the totality of the circumstances. *Id.* at 63.

**{¶26}** Mr. Osborne does not contest the propriety of the initial stop. Rather, he claims that once stopped, Officer Cook improperly detained him in order to conduct field sobriety tests.

6

{¶27} In *Evans*, we set forth a non-exclusive list of factors to be considered when determining whether a police officer had a reasonable suspicion of intoxication justifying the administration of field sobriety tests. That list, on which no one factor is dispositive, consists of the following:

{¶28} "(1) the time and day of the stop (Friday or Saturday night as opposed to, *e.g.*, Tuesday morning); (2) the location of the stop (whether near establishments selling alcohol); (3) any indicia of erratic driving before the stop that may indicate a lack of coordination (speeding, weaving, unusual braking, etc.); (4) whether there is a cognizable report that the driver may be intoxicated; (5) the condition of the suspect's eyes (bloodshot, glassy, glazed, etc.); (6) impairments of the suspect's ability to speak (slurred speech, overly deliberate speech, etc.); (7) the odor of alcohol coming from the interior of the car, or more significantly, on the suspect's person or breath; (8) the intensity of that odor, as described by the officer ('very strong,' 'strong,' 'moderate,' 'slight,' etc.); (9) the suspect's demeanor (belligerent, uncooperative, etc.); (10) any actions by the suspect after the stop that might indicate a lack of coordination (dropping keys, falling over, fumbling for a wallet, etc.); and (11) the suspect's admission of alcohol consumption, the number of drinks had, and the amount of time in which they were consumed, if given." *Id.* at fn. 2.

{¶29} A reviewing court may consider all these factors, together with the officer's previous experience in dealing with impaired drivers, in determining whether the officer acted reasonably. *Id.* Courts generally defer to the law enforcement officer's judgment in deciding to conduct field sobriety tests when the officer's decision was based on a number of factors. *State v. Trimble*, 11th Dist. Portage No. 2010-P-0078, 2011-Ohio-4473, ¶14, citing *Evans* at 63.

7

**{¶30}** Application of the *Evans* factors to this case indicates that Officer Cook's decision to conduct field sobriety tests was justified by specific, articulable facts showing a reasonable basis for the request. Specifically, the record indicates that seven factors set forth in *Evans* were present: (1) the time of the stop (the stop occurred at 1:27 a.m.); (2) the location of the stop (Mr. Osborne admitted he was coming from the Handle Bar); (3) an odor of alcohol emanating from suspect's car or person (Officer Cook noticed an odor of alcohol while speaking with Mr. Osborne, and Mr. Osborne was the only occupant of the vehicle); (4) the condition of the suspect's eyes (Officer Cook reported that Mr. Osborne's eyes were bloodshot); (5) impairment of the suspect's ability to speak (Mr. Osborne exhibited slightly slurred speech); (6) the suspect's admission to alcohol consumption (Mr. Osborne admitted to having at least three Long Island Iced Teas); and (7) an indicia of erratic driving before the stop (Mr. Osborne was traveling at 88 m.p.h., or 28 m.p.h. over the speed limit. In addition, when Officer Cook activated his lights, Mr. Osborne pulled over onto the left side of the roadway instead of the right side).

**{¶31}** "Where a non-investigatory stop is initiated and the odor of alcohol is combined with glassy or bloodshot eyes and further indicia of intoxication, such as an admission of having consumed alcohol, reasonable suspicion exists." (Citations omitted.) *State v. Wiesenbach*, 11th Dist. Portage No. 2010-P-0029, 2011-Ohio-402, ¶24.

**{¶32}** Mr. Osborne cites this court's decision in *Brickman*, *supra*, in support of his argument that Officer Cook did not have reasonable suspicion. In *Brickman*, we held that an officer did not have reasonable suspicion to administer sobriety tests based on a suspect's (1) driving 20 miles per hour over the speed limit (55 mph in a 35 mph zone), (2) smelling "mildly" of alcohol, and (3) admission that he "had a beer." *Id.* at *3. However, we noted that the officer's decision was not "based on a number of factors set forth in

8

*Evans*." We further noted that the officer's report did not state that the suspect had "red, glossy eyes" or "had driven aggressively or erratically." *Id.*

**{¶33}** Mr. Osborne also cites a line of cases originating from the Second District. In *State v. Spillers*, 2d Dist. Darke No. 1504, 2000 WL 299550 (Mar. 24, 2000), the Second District held an officer did not have reasonable suspicion to administer sobriety tests based on (1) three or four "de minimis" lane violations, followed by an interval in which the suspect drove home with no traffic violations or remarkable driving, (2) a slight odor of alcohol on the suspect, which was possibly beer, and (3) the suspect's admission to consuming "a couple" of beers. *Id.* at *3.

**{¶34}** In *State v. Dixon*, 2d Dist. Greene No. 2000 CA 30, 2000 WL 1760664 (Dec. 1, 2000), the Second District, citing *Spillers*, held an officer did not have reasonable suspicion to administer sobriety tests based on (1) the time of night (2:20 a.m.), (2) the suspect's glassy, bloodshot eyes, (3) an odor of alcohol on the suspect's person, and (3) the suspect's admission of having consumed one or two beers. *Id.* at *2. The court noted that the officer did not observe any erratic driving prior to administering field sobriety tests. *Id.*

**{¶35}** In *State v. Swartz*, 2d Dist. Miami No. 2008 CA 31, 2009-Ohio-902, the Second District, citing *Spillers* and *Dixon*, held an officer did not have reasonable suspicion to administer sobriety tests based on (1) a de minimis traffic violation (failure to signal), (2) the suspect's glassy, bloodshot eyes, and (2) an unspecified odor of alcohol. *Id.* at ¶16. The court noted that the officer did not observe any erratic driving prior to administering field sobriety tests. *Id.*

**{¶36}** Similarly, in *Whitehouse v. Stricklin*, 6th Dist. Lucas No. L-10-1277, 2012-Ohio-1877, the Sixth District, citing *Spillers* and *Dixon*, held a state trooper did not have

9

reasonable suspicion to administer sobriety tests based on (1) a de minimis traffic violation (faulty headlight), (2) the suspect's red glassy eyes, and (3) a slight odor of alcohol. *Id.* at ¶15. The court noted that the trooper did not witness any erratic driving or notice any signs of intoxication. *Id.*

**{¶37}** In *State v. Reed*, 7th Dist. Belmont No. 05 BE 31, 2006-Ohio-7075, the Seventh District, citing *Dixon* and *Spillers*, held an officer did not have reasonable suspicion to administer sobriety tests based on (1) a slight smell of alcohol on the suspect, (2) the suspect's red, glassy eyes, and (3) the suspect's admission of drinking two beers. *Id.* at ¶12. The court noted that the officer did not witness a moving violation or erratic driving, and the suspect's speech was not impaired. *Id.*

**{¶38}** Finally, in *State v. Derov*, 7th Dist. Mahoning No. 07 MA 71, 2009-Ohio-5513, the Seventh District, relying on *Dixon* and *Reed*, held a state trooper did not have reasonable suspicion to administer sobriety tests based on (1) the time of night, (2) the suspect's red glassy eyes, and (3) a strong smell of alcohol coming from the suspect's person. *Id.* at ¶15. The court noted that the trooper did not witness any erratic driving or notice any signs of physical impairment. *Id.*

**{¶39}** The above cases are factually distinguishable because Mr. Osborne demonstrated actual signs of impairment. He was not stopped for a de minimis traffic violation but for driving 88 m.p.h., which was 28 m.p.h. over the speed limit. Mr. Osborne also stopped his car in an unusual manner after Officer Cook initiated the traffic stop. In addition to bloodshot eyes and emanating an odor of alcohol, Mr. Osborne exhibited slurred speech. Further, Mr. Osborne did not claim to have had only a beer or two. He admitted that he had left a local bar where he recently drank at least three Long Island Iced Teas, which are mixed drinks comprised of various hard liquors.

10

**{¶40}** Citing materials issued by the NHTSA, Mr. Osborne argues that speeding and bloodshot eyes should not be considered as indicators of OVI. However, NHTSA materials, unlike our binding precedent, do not carry the force of law. *State v. Bish*, 191 Ohio App.3d 661, 2010-Ohio-6604, ¶44 (7th Dist.). Further, NHTSA materials do not conclude that such factors are inconsistent with intoxication, especially when combined with other indicators. While many circumstances, taken alone, can be consistent with a completely innocent explanation, taken together, they are sufficient to support requiring field sobriety tests. *See United States v. Frantz*, 177 F.Supp.2d 760, 764 (S.D. Ohio 2001).

**{¶41}** We conclude that the seven *Evans* factors stated above, together with the Officer Cook's previous experience and training regarding impaired drivers, as referenced in the record, demonstrated a justifiable reasonable suspicion to detain Mr. Osborne after the initial stop to conduct field sobriety tests.

**{¶42}** Mr. Osborne's first assignment of error is without merit.

### Field Sobriety Tests

**{¶43}** In his second assignment of error, Mr. Osborne claims the trial court erred in finding that the city met its burden of proof that Officer Cook administered the field sobriety tests in substantial compliance with the NHTSA standards in effect at the time the tests were given.

**{¶44}** An officer may testify concerning the *results* of a field sobriety test administered in substantial compliance with the testing standards. (Emphasis added.) *State v. Schmitt*, 101 Ohio St.3d 79, 2004-Ohio-37, ¶9. Specifically, R.C. 4511.19(D)(4)(b)(i) provides that an officer may testify concerning the results of a field sobriety test "if it is shown by clear and convincing evidence that the officer administered

11

the test in substantial compliance with the testing standards for any reliable, credible, and generally accepted field sobriety tests that were in effect at the time the tests were administered, including, but not limited to, any testing standards then in effect that were set by the national highway traffic safety administration[.]"

**{¶45}** However, a law enforcement officer may testify at trial regarding *observations* made during a defendant's performance of nonscientific standardized field sobriety tests. (Emphasis added.) *Schmitt* at ¶15.

**{¶46}** Mr. Osborne alleges that the state did not produce sufficient evidence of the applicable NHTSA standards. In addition, he alleges numerous instances of noncompliance with the NHTSA manual with respect to all three field sobriety tests. However, we do not need to determine whether Officer Cook's testimony demonstrated substantial compliance with the applicable standards.

**{¶47}** Although the trial court found that the field sobriety tests "were administered in substantial compliance," it concluded that the tests were "admissible at trial as to the officer's *observations*." (Emphasis added.) Significantly, the trial court did not rule that the test *results* were admissible at trial.

**{¶48}** Similarly, in determining that probable cause existed for Mr. Osborne's arrest, the trial court only referenced Officer Cook's *observations* during the field sobriety testing, not the test *results*. As demonstrated below, the totality of the facts and circumstances, without reference to the field sobriety tests, support a finding of probable cause to arrest Mr. Osborne for OVI.

**{¶49}** Therefore, even if the trial court erred in finding substantial compliance, such error was harmless. *State v. Duncan*, 11th Dist. Lake No. 2004-L-065, 2005-Ohio-7061, ¶26 ("the state's failure to introduce the standard and prove substantial compliance

was harmless error. The surrounding circumstances of the stop provide adequate probable cause for the arrest"); *Gates Mills v. Mace*, 8th Dist. Cuyahoga No. 84826, 2005-Ohio-2191, ¶29 ("Although the trial court erroneously failed to suppress the results of the field sobriety tests, there was ample evidence to support the arrest and conviction, and such error, in this matter, was harmless"); *State v. Matus*, 6th Dist. Wood No. WD-06-072, 2008-Ohio-377, ¶28 ("even without the sobriety tests, there was sufficient evidence to demonstrate that there was probable cause to stop and to convict appellant of operating a vehicle while under the influence of an alcoholic beverage. Therefore, the trial court's error in denying appellant's motion to suppress the sobriety tests was harmless"); *State v. Calder*, 7th Dist. Monroe No. 08 MO 5, 2009-Ohio-3329, ¶47 ("even if the results of the walk and turn and one leg stand tests should have been suppressed, there was still probable cause for arrest and thus, for the administration of the breath test. Consequently, any error in failing to suppress the results of those tests was harmless"); *State v. Stout*, 5th Dist. Licking No. 07-CA-51, 2008-Ohio-2397, ¶84 (although the HGN test was not in substantial compliance with the manual, "there were other indicia of intoxication sufficient to establish probable cause for Appellant's arrest").

{¶50} Mr. Osborne's second assignment of error is without merit.

### Probable Cause

{¶51} In his third assignment of error, Mr. Osborne claims Officer Cook did not have probable cause to arrest him for OVI. We disagree.

{¶52} In determining whether the police had probable cause to arrest an individual for OVI, courts consider whether, at the moment of arrest, the police had sufficient information, derived from a reasonable trustworthy source of facts and circumstances, to cause a prudent person to believe that the suspect was driving under the influence. *State*

13

*v. Homan*, 89 Ohio St.3d 421, 427 (2000), citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964) and *State v. Timson*, 38 Ohio St.2d 122, 127 (1974). In making this determination, courts examine the "totality of facts and circumstances surrounding the arrest." *Id.* The totality of the circumstances can support a finding of probable cause to arrest, even where no field sobriety tests were administered or where the test results are excluded. *Id.*

**{¶53}** Even excluding the results of the field sobriety tests, the totality of the facts and circumstances in this case provided ample probable cause for Officer Cook to arrest Mr. Osborne for OVI. *See id.* (probable cause found where officer observed erratic driving, the suspect had red, glassy eyes and breath that smelled of alcohol, and the suspect admitted to consuming alcoholic beverages); *State v. Wojewodka*, 11th Dist. Portage No. 2009-P-0029, 2010-Ohio-973, ¶20 (probable cause found where suspect had red and watery eyes and slow speech, the officer smelled a strong odor of alcohol, and the suspect admitted to consuming alcohol); *State v. Penix*, 11th Dist. Portage No. 2007-P-0086, 2008-Ohio-4050, ¶30 (probable cause found where suspect sped on snowy, wet road conditions during the early morning hours, had an odor of alcohol emanating from his vehicle and person, admitted to drinking, and admitted to being at a bar); *State v. Dwyer*, 11th Dist. Lake No. 2001-L-075, 2002 WL 255498, *4 (Feb. 22, 2002) (probable cause found where officer observed erratic driving, the suspect had bloodshot and glassy eyes, breath that smelled of alcohol, and slurred speech, and the suspect admitted to consuming alcoholic beverages).

**{¶54}** Mr. Osborne cites the Fifth District's decision in *State v. Kopp*, 5th Dist. Licking No. 16-CA-96, 2017-Ohio-4428, in support of his argument that Officer Cook did not have probable cause. However, *Kopp* is clearly distinguishable. The officer in *Kopp* pulled the suspect over for an expired license, not for any traffic or moving violations. *Id.*

at ¶3-4. In addition, the officer in *Kopp* smelled the odor of fresh marijuana and an alcoholic beverage, but the suspect exhibited no visible signs of impairment. *Id.* at ¶5, 21.

{¶55} Mr. Osborne's third assignment of error is without merit.

**Breath Test**

{¶56} In his fourth assignment of error, Mr. Osborne claims the city did not demonstrate substantial compliance with the Ohio Revised Code and the Ohio Administrative Code in relation to the breath test. Therefore, he argues the trial court erred in finding the breath test to be admissible.

***Legal Standards***

{¶57} R.C. 4511.19(D)(1), which governs the admissibility of alcohol test results, provides that a suspect's breath "shall be analyzed in accordance with methods approved by the director of health by an individual possessing a valid permit issued by the director pursuant to section 3701.143 of the Revised Code." Pursuant to this statutory mandate, the Ohio Director of Health promulgated alcohol testing regulations in Ohio Adm.Code Chapter 3701-53. *See Burnside*, *supra*, at ¶10.

{¶58} The issue of whether "[t]he bodily substance withdrawn [was] analyzed in accordance with methods approved by the director of health" is not a jury question and is to be decided by the court prior to trial. *State v. Edwards*, 107 Ohio St.3d 169, 2005-Ohio-6180, ¶20. To make that determination, a trial court may rely on hearsay and other evidence, even though that evidence would not be admissible at trial. (Citations omitted.) *Id.* at ¶14.

{¶59} Courts apply a burden-shifting procedure to govern the admissibility of alcohol test results. (Citation omitted.) *Burnside* at ¶24. The defendant must first

15

challenge the validity of the alcohol test by way of a pretrial motion to suppress; failure to file such a motion waives the requirement on the state to lay a foundation for the admissibility of the test results. (Citation omitted.) *Id.*

**{¶60}** After a defendant challenges the validity of test results in a pretrial motion, the state has the burden to show that the test was administered in substantial compliance with the regulations prescribed by the Director of Health. *Id.* The substantial compliance standard excuses only errors that are clearly de minimis. *Id.* at ¶34.

**{¶61}** Once the state has satisfied this burden and created a presumption of admissibility, the burden then shifts to the defendant to rebut that presumption by demonstrating that he was prejudiced by anything less than strict compliance. (Citation omitted.) *Id.* at ¶24.

### *"Shotgun" Motion to Suppress*

**{¶62}** In his motion to suppress, Mr. Osborne alleged generally that the breath test was not administered in accordance with R.C. 4511.19(D) and Ohio Adm.Code Chapter 3701-53. He then provided a laundry list of citations to the Ohio Department of Health ("ODH") regulations and asserted that the police failed to comply with each of them.

**{¶63}** Pursuant to Crim.R. 47 and *Xenia v. Wallace*, 37 Ohio St.3d 216 (1988), a suppression motion must "state *with particularity* the legal and factual issues to be resolved," thereby placing the prosecutor and court "on notice of those issues to be heard and decided by the court and, by omission, those issues which are otherwise being waived." (Emphasis added.) *State v. Shindler*, 70 Ohio St.3d 54, 58 (1994).

16

{¶64} Mr. Osborne argues that his motion is sufficiently particular based on the Supreme Court of Ohio's decisions in *Shindler*, *supra*, and *State v. Codeluppi*, 139 Ohio St.3d 165, 2014-Ohio-1574. We disagree.

{¶65} In *Shindler*, the defendant filed a motion to suppress a breath test that was a virtual copy of a sample motion contained in a legal handbook. *Id.* at 57. The court found that the defendant's motion was sufficient because in addition to setting forth a list of legal reasons for suppression, the defendant also set forth "underlying facts." *Id.*

{¶66} In *Codeluppi*, the defendant's motion to suppress alleged that the officer had not conducted field sobriety tests in substantial compliance with NHTSA guidelines as required by R.C. 4511.19(D)(4)(b). *Id.* at ¶13. The court found this statement to be sufficient to identify the issues the defendant was raising. *Id.* The court noted that a video recording of the field sobriety tests was not available. *Id.* at ¶14. Thus, the defendant provided notice of "legally significant facts to the extent that the facts were available," which rendered her motion more than a "mere fishing expedition." *Id.*

{¶67} Here, Mr. Osborne's motion contained no factual basis nor was it targeted toward one specific code section. Rather, Mr. Osborne employed a "shotgun approach achieved by merely 'wrapping the administrative code in a folder and filing it.'" (Citation omitted.) *See State v. Stoner*, 6th Dist. Ottawa No. OT-05-042, 2006-Ohio-2122, ¶26; *State v. Kuzma*, 11th Dist. Portage No. 93-P-0019, 1993 WL 545129, *2 (Dec. 3, 1993). By alleging a violation of everything, Mr. Osborne alleged a violation of nothing in particular. *See State v. Tyner*, 2d Dist. Montgomery No. 25405, 2014-Ohio-2809, ¶13.

{¶68} Such motions do not give the prosecutor or the court adequate notice of the issues truly in dispute. *See Tyner* at ¶15 (defendant did not meet his burden where he "filed a boilerplate memorandum that * * * unreasonably alleged every conceivable

17

violation of Ohio Admin. Code 3701-53-01, et seq."); *Stoner* at ¶15 (defendant did not meet his burden by listing a "laundry list of 15 allegations that appear to encompass every possible defect that may have occurred in [his], or any other defendant's, field sobriety test or chemical test"); *State v. Zink*, 9th Dist. Summit No. 17484, 1996 WL 502317, *2 (Sept. 4, 1996) ("Appellant's motion to suppress was totally inadequate because it merely listed every possible rule and regulation that might conceivably be applicable").

**{¶69}** Therefore, we conclude Mr. Osborne did not meet his burden to adequately place the city on notice of the need to present suppression hearing testimony establishing compliance with R.C. 4511.19(D) and Ohio Adm.Code Chapter 3701-53.

**{¶70}** Further, at the suppression hearing, Mr. Osborne raised only two specific challenges to the breath test. Mr. Osborne's failure to assert additional challenges constitutes a waiver of such issues for purposes of appeal. *See State v. Box*, 10th Dist. Franklin No. 16AP-371, 2017-Ohio-1138, ¶13; *Xenia*, *supra*, at 218 ("Failure on the part of the defendant to adequately raise the basis of his challenge constitutes a waiver of that issue on appeal").

### *Substantial Compliance*

**{¶71}** Even if Mr. Osborne properly placed the city on notice regarding the specific issues he raised at the suppression hearing, the city established substantial compliance.

**{¶72}** The first issue involved whether the Intoxilyzer ran a "dry gas control" in between Mr. Osborne's two breath samples. Officer Cook testified that after Mr. Osborne provided his first breath sample, he took the air hose and put it back on the holster so the machine could run a dry gas control. He then took the hose back out and had Mr. Osborne provide his second sample. When Mr. Osborne's counsel presented him with the test

18

result printout, Officer Cook admitted it contained no data indicating a dry gas control ran between Mr. Osborne's two samples.

{¶73} Ohio Adm.Code 3701-53-04(B) specifically states "[a] dry gas control is not required between the two breath samples." *See State v. Jones*, 11th Dist. Portage No. 2012-P-0107, 2013-Ohio-4114, ¶62 (interpreting the prior version of this regulation). Therefore, even if the machine failed to run a dry gas control in between the two samples, it would not constitute a violation.

{¶74} The second issue related to the printout of Mr. Osborne's test results. Officer Cook testified that the printer attached to the Intoxilyzer failed to print the test results immediately following Mr. Osborne's test. After Mr. Osborne posted bond and was released, another officer was able to retrieve a printout of the test results from the Intoxilyzer's internal printer, which showed a BAC of 0.201. Officer Cook also identified the printout at the suppression hearing. Although the printout is not part of the record for our review, the trial court stated in its judgment entry that the printout showed a BAC of 0.201 and contained no error reports.

{¶75} Accordingly, the trial court's finding of substantial compliance is supported by competent, credible evidence. Further, Mr. Osborne did not attempt to demonstrate that he was prejudiced by anything less than strict compliance.

{¶76} Mr. Osborne's fourth assignment of error is without merit.

{¶77} Based on the foregoing, the judgment of the Willoughby Municipal Court is affirmed.

CYNTHIA WESTCOTT RICE, J.,

MATT LYNCH, J.,

concur.