[Cite as *State v. Allen*, 2025-Ohio-1902.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## TRUMBULL COUNTY

| | |
|---|---|
| STATE OF OHIO, | CASE NO. 2024-T-0096 |
| Plaintiff-Appellee, | |
| - vs - | Criminal Appeal from the Court of Common Pleas |
| DERRICK D. ALLEN, | |
| Defendant-Appellant. | Trial Court No. 2023 CR 00695 |

## OPINION AND JUDGMENT ENTRY

Decided: May 27, 2025
Judgment: Affirmed

*Dennis Watkins*, Trumbull County Prosecutor, and *Charles L. Morrow*, Assistant Prosecutor, Administration Building, Fourth Floor, 160 High Street, N.W., Warren, OH 44481 (For Plaintiff-Appellee).

*Eric J. Cherry*, N.P. Weiss Law, 4070 Mayfield Road, South Euclid, OH 44121 (For Defendant-Appellant).

SCOTT LYNCH, J.

{¶1} Defendant-appellant, Derrick D. Allen, appeals the denial of his suppression motion and the imposition of fines as part of his sentence for multiple drug-related charges. For the following reasons, we affirm the denial of his motion and the imposition of the fines.

{¶2} On November 1, 2023, the Trumbull County Grand Jury indicted Allen on the following charges: Possession of Heroin (Count 1), a felony of the first degree in violation of R.C. 2925.11(A) and (C)(6)(e), with a specification of forfeiture pursuant to R.C. 2941.1417(A); Aggravated Possession of Drugs (Count 2), a felony of the second

degree in violation of R.C. 2925.11(A) and (C)(1)(c); Possession of Cocaine (Count 3), a felony of the first degree in violation of R.C. 2925.11(A) and (C)(4)(e); Possession of Cocaine (Count 4), a felony of the fifth degree in violation of R.C. 2925.11(A) and (C)(4)(a); Possession of a Fentanyl-related Compound (Count 5), a felony of the first degree in violation of R.C. 2925.11(A) and (C)(11)(e); Tampering with Evidence (Count 6), a felony of the third degree in violation of R.C. 2921.12(A)(1) and (B); and Illegal Conveyance of Prohibited Items onto the Grounds of a Specified Government Facility (Count 7), a felony of the third degree in violation of R.C. 2921.36(A)(2) and (G)(2).

{¶3}   On December 12, 2023, Allen filed a Motion to Suppress Evidence.  A hearing on the Motion was held on February 1, 2024, at which Officer Phillip Sajnovsky of the Warren City Police Department testified.

{¶4}   On March 19, 2024, the trial court issued its Judgment Entry denying the Motion.  The court made the following relevant findings of fact and conclusions of law:

> On August 20, 2023, at approximately 3:00am, Warren City Police Officer Phil Sajnovsky was responding to a call regarding a large gathering at the Elm Road Convenient Store.  Based on his experience, Officer Sajnovsky knows this location as a high-crime area.  As he was approaching the store, near the intersection of Elm Road and Larchmont, Officer Sajnovsky observed a vehicle leaving the Elm Road Convenient Store with no headlights on and dark window tint.  Officer Sajnovsky proceeded to follow the vehicle and conducted a traffic stop.  Officer Sajnovsky's sergeant, Sergeant Sumption, was also in the vicinity and joined the stop.
>
> Officer Sajnovsky approached the driver's side of the vehicle and identified the driver as Mr. Lloyd Fraction IV and the front seat passenger as the Defendant.  Sergeant Sumption approached and was standing at the passenger's side of the vehicle.  Officer Sajnovsky observed the driver appearing to be nervous as he was sweating and his chest was palpitating.  Officer Sajnovsky also observed the driver moving his hands around and reaching down toward the floorboard.  Based on his training and experience, Officer Sajnovsky believed this was abnormal behavior.  He asked the driver

Case No. 2024-T-0096

if he could search the vehicle for weapons or drugs. The driver refused to give consent to the search, which led to Officer Sajnovsky calling for a K9 unit.

Officer Sajnovsky testified that when a K9 unit arrives to a stop, all occupants of the vehicle are asked to exit the vehicle for the dog's safety. Officer Sajnovsky asked the driver to step out of the vehicle and while he was initially uncooperative, he did eventually exit the vehicle. Upon exiting the vehicle, to ensure the officers' safety, Officer Sajnovsky conducted a pat down of the driver to search for weapons and nothing was found.

Officer Sajnovsky then joined Sergeant Sumption at the passenger side of the vehicle. Officer Sajnovsky observed Defendant grabbing or reaching toward the floorboard and moving his hands around his feet. Officer Sajnovsky also observed Defendant reacting and moving slowly when spoken to and breathing heavily. Based on his training and experience, Officer Sajnovsky believed that this behavior was abnormal.

During the pat down, Officer Sajnovsky felt a crushed rock-like substance in one of Defendant's pockets and, based on his training and experience, knew it to be crack cocaine. He then removed it from Defendant's pocket. Officer Sajnovsky continued the pat down and felt a large lump under Defendant's buttock. Officer Sajnovsky asked Defendant what it was and whether he would remove it. Defendant responded that it was nothing and refused to remove it. Based on his training and experience, Officer Sajnovsky knew that individuals hide drugs near their rectum area and believed this to be the case with Defendant. Officer Sajnovsky did not remove the item but charged Defendant with obstructing official business and transported him to the Trumbull County jail. During a search of Defendant at the jail, a large Crown Royal bag containing crack, meth, and heroin was found in his rectum area.

…

The Court finds that the initial traffic stop was constitutionally valid as Officer Sajnovsky observed the vehicle driving with no headlights on and dark window tint that he perceived, based on his training and experience, was beyond what was legally permissible. Officer Sajnovsky was further permitted to order the driver and Defendant to exit the vehicle. *State v. Tamas*, 2023-Ohio-1710, ¶ 20 (11th Dist.).

Case No. 2024-T-0096

The Court finds that Officer Sajnovsky was justified in conducting a pat down of Defendant to ensure his and Sergeant Sumption's safety. Officer Sajnovsky observed Defendant grabbing or reaching toward the floorboard, moving his hands around his feet, reacting and moving slowly, and breathing heavily. Officer Sajnovsky also observed the driver appearing to be nervous as he was sweating and his chest was palpitating and observed him moving his hands around and reaching down toward the floorboard. Both nervousness and a defendant's movements, such as furtive gestures, can be factors in determining whether a police officer had reasonable suspicion. *State v. Alexander-Lindsey*, [65] N.E.3d 129, 138, 2016-Ohio-3033, ¶ 23-24 (4th Dist.). Officer Sajnovsky identified this as abnormal behavior by both Defendant and the driver.

Further, the vehicle was seen leaving a location that Officer Sajnovsky knew to be a high crime area at 3:00am. Therefore, in reviewing the totality of the circumstances, the Court finds that Officer Sajnovsky had a reasonable suspicion that Defendant could be armed and dangerous and was justified in conducting a pat down to ensure both officers' safety.

While a protective pat down under *Terry* is limited to discovering weapons, the "plain feel" doctrine will apply if during the pat down "an officer detects an object whose criminal character is immediately apparent to him." *State v. Brown*, 2019-Ohio-1112, ¶ 23 (4th Dist.). In such an instance, the officer would be justified in seizing the object. *Id.* Here, Officer Sajnovsky first plainly felt a crushed, rocklike substance in Defendant's pocket and, based on his training and experience, he knew it to be crack cocaine and removed it from Defendant's pocket. As Officer Sajnovsky continued his pat down, he felt a lump under Defendant's buttock. Based on his training and experience, Officer Sajnovsky believed this item to also be contraband as individuals will hide drugs in the rectum area. Officer Sajnovsky did not seize this item, instead charging Defendant with obstructing official business and transporting him to the county jail to be searched. The Court finds that there was probable cause to arrest Defendant.

{¶5} Following a jury trial, Allen was found guilty of all seven counts of the Indictment.

{¶6} On November 12, 2024, the trial court issued its Entry on Sentence. Allen received an aggregate minimum term of fifteen years and a maximum term of twenty

years.  In addition, Allen was ordered to pay mandatory fines of $10,000 as to Possession of Heroin (Count 1); $7,500 as to Aggravated Possession of Drugs (Count 2); $10,000 as to Possession of Cocaine (Count 3); and $10,000 as to Possession of a Fentanyl-related Compound (Count 5).  The costs of prosecution were waived.

{¶7}  On November 15, 2024, Allen filed a Notice of Appeal.  On appeal, he raises the following assignments of error:

> [1.] The court erred by denying appellant's motion to suppress as officers unreasonably extended a traffic stop without specific, articulable facts to support a continued investigation.
>
> [2.] The trial court erred by denying appellant's motion to suppress as officer [sic] lacked specific, articulable facts to justify a *Terry* 'stop and frisk' search.
>
> [3.] The trial court erred by failing to consider appellant's present and future ability to pay pursuant to [R.C.] 2929.19(B)(5).

{¶8}  Allen's first two assignments of error arise from the denial of his Motion to Suppress.

{¶9}  "Appellate review of a motion to suppress presents a mixed question of law and fact."  *State v. Burnside*, 2003-Ohio-5372, ¶ 8.  "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses."  *Id.*  "[A]n appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence."  *Id.*  "Accepting these facts as true, the appellate court must then independently [i.e., de novo] determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard."  *Id.*

{¶10}  Under the first assignment of error, Allen argues: "The Warren City Police Officers conducting the traffic stop had no articulable basis to extend the traffic stop of

Mr. [Allen's] vehicle in order to conduct a drug investigation or to search the subject automobile." Brief of Appellant at 5. Under the second assignment, Allen argues: "The responding officers also lacked reasonable suspicion based on articulable facts to support a search of Mr. Allen's person after he was removed from the subject vehicle." Brief of Appellant at 8. The State argues preliminarily that Allen should not be permitted to raise these arguments on appeal because they were not raised in the underlying suppression motion. Brief of Appellee at 6.

{¶11} "In order to require a hearing on a motion to suppress evidence, the accused must state the motion's legal and factual bases with sufficient particularity to place the prosecutor and the court on notice of the issues to be decided." *State v. Shindler*, 70 Ohio St.3d 54 (1994), syllabus; Crim.R. 47 (a motion "shall state with particularity the grounds upon which it is made and shall set forth the relief or order sought"). "Failure on the part of the defendant to adequately raise the basis of his challenge [to suppress evidence] constitutes a waiver of that issue on appeal." *Xenia v. Wallace*, 37 Ohio St.3d 216, 218 (1988); *Shindler* at 58 ("[b]y requiring the defendant to state with particularity the legal and factual issues to be resolved, the prosecutor and court are placed on notice of those issues to be heard and decided by the court and, by omission, those issues which are otherwise being waived"). Although the State typically "bears the ultimate burden of establishing that … a search falls into an exception to the warrant requirement[,] … before the [State] is put to this burden, the defendant must assert the grounds upon which he intends to challenge the validity of the search." *State v. Wintermeyer*, 2019-Ohio-5156, ¶ 18.

Case No. 2024-T-0096

{¶12} In the present case, Allen's Motion to Suppress raised the following legal and factual bases for the suppression of evidence: "[I]n this case, where events are circumstantially too ambiguous to create any reasonable suspicion that an individual was engaged in or was about to engage in criminal activity, the search of that individual is unwarranted and unconstitutional. … Here the police searched Mr. Allen's person without a search warrant, without his consent, and absent any exigent circumstances." Without question, Allen raised a challenge to the search of his person with sufficient particularity. However, nothing in the Motion to Suppress would have put the State on notice that he was challenging the duration of the traffic stop. Accordingly, this argument is waived for the purposes of appeal. *State v. Osborne*, 2019-Ohio-3235, ¶ 70 (11th Dist.).

{¶13} Considered under a plain error standard, Allen's argument under the first assignment is without merit. "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Crim.R. 52(B). To constitute a "plain" error, "it must be 'an "obvious" defect in the trial proceedings.'" (Citations omitted.) *State v. Morgan*, 2017-Ohio-7565, ¶ 36.

{¶14} "When a lawfully stopped vehicle contains passengers, the Fourth Amendment permits law enforcement officers to detain those passengers for the duration of the lawful detention of the driver." (Citation omitted.) *State v. Foti*, 2024-Ohio-39, ¶ 8 (11th Dist.); *Arizona v. Johnson*, 555 U.S. 323, 333 (2009) ("[t]he temporary seizure of driver and passengers ordinarily continues, and remains reasonable, for the duration of the stop"). "[T]he tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'–to address the traffic violation that warranted the stop … and attend to related safety concerns." *Rodriguez v. United States*, 575 U.S. 348,

Case No. 2024-T-0096

354 (2015). "[A] dog sniff … is not an ordinary incident of a traffic stop" nor "part of the officer's traffic mission." *Id.* at 356. Accordingly, "absent reasonable suspicion, police may not extend an otherwise completed traffic stop to conduct a dog sniff." *State v. Dunlap*, 2024-Ohio-4821, ¶ 19, citing *Rodriguez* at 355. "The critical question … is not whether the dog sniff occurs before or after the officer issues a ticket, … but whether conducting the sniff 'prolongs'—*i.e.,* adds time to—'the stop.'" *Rodriguez* at 357. Conversely, "[a]n officer needs no suspicion or cause to run a dog around a stopped vehicle **if** the sniff is performed contemporaneously with legitimate activities associated with the traffic violation." *State v. Doering*, 2025-Ohio-1297, ¶ 17 (5th Dist.); *State v. Batchili*, 2007-Ohio-2204, ¶ 14 ("[t]here is no showing that the detention was delayed so that the dog could conduct its search, and therefore, there was no constitutional violation").

{¶15} As a consequence of Allen failing to argue with particularity that the calling of the K9 unit unconstitutionally prolonged the detention, the prosecution did not present evidence on this issue and the trial court made no findings as to whether the stop was extended or, if extended, whether the extension was justified by reasonable suspicion. Officer Sajnovsky testified that the K9 unit arrived "as I'm writing the citation" and, so, before any extension of the stop beyond the underlying reason for the stop. The K9 unit was never deployed. After the arrival of the unit, the driver and Allen were ordered out of the vehicle and searched. There is no further testimony regarding the issuance of the citation as Allen was taken into custody as a result of the search. Given these circumstances, it cannot be said that there is any obvious error with respect to the length of the detention. The evidence is insufficient to demonstrate a constitutional violation and

Case No. 2024-T-0096

this Court has failed to find a constitutional violation in similar circumstances. *State v. Johnson*, 2025-Ohio-890, ¶ 32 (11th Dist.) ("despite Officer Mehm's testimony that he believed he had reasonable suspicion to extend the stop to await the canine officer, he also testified that he had not yet completed the traffic citation when Officer Merrifield arrived, and he had not delayed its completion"); *State v. Reuschling*, 2025-Ohio-516, ¶ 16 (11th Dist.) ("[t]he canine sniff was conducted upon completion of the field sobriety tests, and did not measurably prolong the stop, as the trooper had not yet issued a citation or warning for the window tint due to the intervening investigation for impairment").

{¶16} The first assignment of error is without merit.

{¶17} "Where a police officer, during an investigative stop, has a reasonable suspicion that an individual is armed based on the totality of the circumstances, the officer may initiate a protective search [a pat-down or frisk] for the safety of himself and others." *State v. Bobo*, 37 Ohio St.3d 177 (1988), paragraph two of the syllabus; *State v. Hairston*, 2019-Ohio-1622, ¶ 9. "Typically, to conduct a pat-down search for weapons, an officer must have a 'specific and articulable' belief based on the 'reasonably prudent man' standard that an individual is armed and dangerous." *State v. Lozada*, 92 Ohio St.3d 74, 75 (2001). "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry v. Ohio*, 392 U.S. 1, 27 (1968). "The rationale behind the protective search is to allow the officer to take reasonable precautions for his own safety in order to pursue his investigation without fear of violence." *State v. Andrews*, 57 Ohio St.3d 86, 89 (1991).

Case No. 2024-T-0096

{¶18} The trial court concluded that the pat down search of Allen was justified given his furtive movements while inside the vehicle, his excessive nervousness, and the fact that the stop occurred in a high crime area during the early morning hours. *See Alexander-Lindsey*, 2016-Ohio-3033, at ¶ 24 (4th Dist.) ("[w]hile a furtive gesture, standing alone, does not create probable cause for a search, reliance on such a clandestine gesture when other facts indicating a reasonable suspicion of criminal activity are also present is sufficient for a *Terry* stop"). Allen contends that the circumstances identified by the trial court do not provide a basis for believing that he was armed and dangerous. *See Maryland v. Buie*, 494 U.S. 325, 334, fn. 2 (1990) ("[e]ven in high crime areas, where the possibility that any given individual is armed is significant, *Terry* requires reasonable, individualized suspicion before a frisk for weapons can be conducted").

{¶19} The totality of the circumstances in the present case justified the protective search of Allen. First, we note the reputation of the Elm Road Convenient store as a high crime area. As described by Officer Sajnovsky, "violent crimes happen here … [e]verything from gun calls to drug complaints, people being stabbed, robberies." On this particular occasion, there was a report of a "large gathering" at the location at three o'clock in the morning. As often recognized by Ohio's supreme court, "[a]n area's reputation for criminal activity [high in drug activity, violence, and weapons-related crime] is an articulable fact which is a part of the totality of circumstances surrounding a stop to investigate suspicious behavior." *State v. Andrews*, 57 Ohio St.3d 86, 88 (1991); *State v. Hairston*, 2019-Ohio-1622, ¶ 12 ("[a]n officer's experience with criminal activity in an area and an area's reputation for criminal activity are factors we have found relevant to the reasonable-suspicion analysis" and "the stop occurred after dark—another

Case No. 2024-T-0096

circumstance we have found to be of some significance in the reasonable-suspicion analysis").

{¶20} Next, the furtive movements of both Allen and the driver and their peculiar behaviors (or nervousness) suggested to Officer Sajnovsky, "with [his] experience in traffic stops and getting drugs and guns," the possibility of criminal behavior. Similar to the driver's behavior, he observed "Allen grabbing at the floorboard, moving his hands down by his feet." *State v. McGary*, 2007-Ohio-4766, ¶ 30, 6 (11th Dist.) ("the late hour in a high-crime area … combined with McGary's furtive movements [reaching 'toward the floor of the vehicle by the center console'] … gave rise to a reasonable suspicion that warranted a further investigatory stop"). The driver was described as "sweating," "looking down at his waist band," and "his chest [was] palpitating." The driver was also hesitant to comply with the command to exit the vehicle until pressured by the officers. Allen was also breathing heavily and had "a thousand-mile stare." Officer Sajnovsky was not sure if Allen was intoxicated or not, "but when [they] asked him [to exit the vehicle], he was very slowly moving and didn't really comprehend what [they] were saying." In the officer's judgment, "that abnormal behavior … keys me off that they're attempting to hide something or there's something illegal in the car." *State v. Zaller*, 2024-Ohio-2323, ¶ 15 (11th Dist.) ("the officers were justified in subjecting Zaller to a protective search for weapons based on his agitated and erratic behavior"); *State v. Jennings*, 2013-Ohio-2736, ¶ 18 (10th Dist.) ("[a]lthough some degree of nervousness during interactions with police officers is not uncommon, … nervousness can be a factor to weigh in determining reasonable suspicion") (citation omitted).

Case No. 2024-T-0096

{¶21} In sum, the factors identified by the trial court – the time and location of the stop, the furtive movements and nervousness of the defendant, and the officer's experience in narcotics cases – justified the protective search of Allen. Although it is often recognized that none of these factors in isolation would normally justify the search, as part of the totality of the circumstances it is recognized they create a reasonable suspicion that a suspect may be armed and dangerous. *Alexander-Lindsey*, 2016-Ohio-3033, at ¶ 24 (4th Dist.) ("[w]hile a furtive gesture, standing alone, does not create probable cause for a search, reliance on such a clandestine gesture when other facts indicating a reasonable suspicion of criminal activity are also present [the reputation of an area for criminal activity and nervousness] is sufficient for a *Terry* stop"); *State v. Simmons*, 2013-Ohio-5088, ¶ 17 (12th Dist.) (furtive gesture considered along with the reputation of an area for criminal activity and nervousness may create probable cause for a search). This is especially so when the suspected criminal activity involves a possible drug transaction. *State v. Evans*, 67 Ohio St.3d 405, 413 (1993) ("[t]he right to frisk is virtually automatic when individuals are suspected of committing a crime, like drug trafficking, for which they are likely to be armed").

{¶22} The second assignment of error is without merit.

{¶23} In the third assignment of error, Allen argues that the trial court erred by ordering him to pay an aggregate amount of $37,500 in mandatory fines without considering his present and future ability to pay.

{¶24} The scope of an appellate court's ability to review the imposition of a financial sanction is defined by R.C. 2953.08(G)(2), i.e., whether the court clearly and

convincingly finds that the financial sanction is "otherwise contrary to law." *State v. Long*, 2021-Ohio-1059, ¶ 20 (11th Dist.); *State v. Gipson*, 2022-Ohio-2069, ¶ 36 (6th Dist.).

{¶25} The trial court imposed mandatory fines on Allen pursuant to R.C. 2929.18(B)(1) which provides: "For a first, second, or third degree felony violation of any provision of Chapter 2925., 3719., or 4729. of the Revised Code, the sentencing court shall impose upon the offender a mandatory fine of at least one-half of, but not more than, the maximum statutory fine amount authorized for the level of the offense pursuant to division (A)(3) of this section."[1]  There two provisions by which the offender may avoid the imposition of a mandatory fine.

{¶26} "If an offender alleges in an affidavit filed with the court prior to sentencing that the offender is indigent and unable to pay the mandatory fine and if the court determines the offender is an indigent person and is unable to pay the mandatory fine described in this division, the court shall not impose the mandatory fine upon the offender."  R.C. 2929.18(B)(1).  In the present case, no affidavit alleging that Allen was indigent and unable to pay the mandatory fines was filed with the trial court prior to sentencing.  Therefore, this provision is not applicable to Allen.  *State v. Gipson*, 80 Ohio St.3d 626, 633 (1998) ("the fact that the affidavit was not properly filed prior to sentencing is, standing alone, a sufficient reason to find that the trial court committed no error by imposing the statutory fine"); *State v. Nowden*, 2022-Ohio-4633, ¶ 14 (8th Dist.) ("[w]ithout such filing, the trial court did not err when it imposed the mandatory fine pursuant to R.C. 2929.18(B)(1)") (citation omitted).

---

1. Mandatory fines were associated with Counts 1 to 5.  At sentencing, Count 4 was merged with Count 3.

Case No. 2024-T-0096

{¶27} "Before imposing a financial sanction under section 2929.18 of the Revised Code …, the court shall consider the offender's present and future ability to pay the amount of the sanction or fine." R.C. 2929.19(B)(5). Under this provision, "[t]here are no express factors that must be considered or specific findings that must be made regarding the offender's ability to pay." (Citation omitted.) *State v. Sbarbati*, 2024-Ohio-622, ¶ 7 (12th Dist.). Rather, "a court is merely required to consider the offender's present and future ability to pay." (Citation omitted.) *Long*, 2021-Ohio-1059, at ¶ 25 (11th Dist.). "However, some evidence must be present in the record to indicate that the trial court considered an offender's present and future ability to pay." (Citation omitted.) *Id.* Such evidence exists when the court indicates that it has duly considered an offender's present and future ability to pay in its judgment entry or when the record indicates that the court has considered a pre-sentence investigation report providing pertinent personal and financial information about the offender. *Id.*; *Sbarbati* at ¶ 7. In the present case, the trial court stated at the sentencing hearing and in the Entry on sentence that it had considered the pre-sentence investigation report. Additionally, at the sentencing hearing, counsel for Allen orally moved for the waiver of both costs and mandatory fines on the grounds of indigency. The court ruled that it would waive costs but not the mandatory fines. The foregoing is sufficient to satisfy the requirement to consider Allen's present and future ability to pay. *Sbarbati* at ¶ 8 ("because the record in this case includes a PSI containing Sbarbati's personal and financial information, something which the trial court explicitly stated within its judgment entry that it had considered, the 'consideration' requirement set forth in R.C. 2929.19(B)(5) was clearly satisfied in this case").

{¶28} Finally, Allen's arguments that he "will be incarcerated for the foreseeable future" and "is likely to have great difficulty in securing employment" do not render the imposition of the mandatory fines contrary to law where the court has otherwise complied with R.C. 2929.19(B)(5).

{¶29} The third assignment of error is without merit.

{¶30} For the foregoing reasons, the denial of Allen's suppression motion and the imposition of fines as part of his sentence are affirmed. Costs to be taxed against the appellant.


ROBERT J. PATTON, P.J.,

JOHN J. EKLUND, J.,

concur.

Case No. 2024-T-0096

# JUDGMENT ENTRY

For the reasons stated in the Opinion of this court, the assignments of error are without merit. The order of this court is that the judgments of the Trumbull County Court of Common Pleas are affirmed.

Costs to be taxed against appellant.

JUDGE SCOTT LYNCH

PRESIDING JUDGE ROBERT J. PATTON,
concurs

JUDGE JOHN J. EKLUND,
concurs

**THIS DOCUMENT CONSTITUTES A FINAL JUDGMENT ENTRY**

A certified copy of this opinion and judgment entry shall constitute the mandate pursuant to Rule 27 of the Ohio Rules of Appellate Procedure.

Case No. 2024-T-0096